## SEVIER et al., Appellants, v. WOODSON, Executor, et al.

### Division One, June 29, 1907.

1. **WILLS: Valid and Invalid Portions: Changing Scheme.** While a will may be valid in part and invalid in part, yet in determining what was the real scheme of disposition in the mind of the testator the valid and invalid portions must be alike considered, for the reason that the presumption must be indulged that the testator in formulating his scheme of disposition thought all parts of his will were valid. Hence, if the elimination of the invalid portions, if any there be, so changes the general scheme and purpose of the testator as to make the remaining portions amount to a new and different will, then the whole must fail, and for the reason that courts cannot make wills.

2. ————: **Clear Devise: Cut Down by Subsequent Clause.** Where a certain and definite estate is granted in plain and unequivocal terms in one clause of the will, it cannot be lessened or cut down by a subsequent clause, unless the language used in the subsequent clause is as clear, plain and unequivocal as the language used in the grant.

Sevier v. Woodson.

3. ———: ———: ———: **Void Clause: Changing Scheme of Dis-
position.** The testator had two daughters and a son, and gave
to the son one-third of his estate absolutely. Another clause of
his will read: "I will and devise to each of my daughters......
each one-third of my estate for and during their natural lives,
then to go to their bodily heirs, if any, if not, then to their
brother......and his bodily heirs, and it is my will and I hereby
so direct, that the share, interest and estate hereby devised be
held in trust for each of them and for their only and sole use
and benefit by their brother, who is hereby appointed and cre-
ated their trustee......And I further direct and will that he
......pay over to each of said sisters as much of the interest
accruing on the means hereby devised to each of them as will
abundantly provide for their comfort and necessities." *Held,*
first, that the first sentence or clause gave to each of the two
daughters a separate life estate in one-third of the estate,
placing it in trust, so as to give each the earnings of said life
estate, as their absolute property, the corpus itself to be pre-
served and to go, upon their death, to their respective bodily
heirs, if there be such, and if not, to their brother "and his
bodily heirs;" the usufruct or earnings of the life estates going
to the daughters respectively, the full proceeds becoming their
individual property and cannot be added to the corpus of the
trust fund; *second,* by the second clause or sentence the testator
undertook, in a vague and uncertain way, to limit the amount of
the earnings that should go to the daughters to such an amount
"as will abundantly provide for their comfort and necessities,"
leaving it to the trustee to determine what portion of the earn-
ings or income their abundant "comfort and necessities" might
require, with no rule by which he was to be guided, and, hence,
the latter sentence is void, in that, by indefinite words, inferen-
tial in their character, it attempts to impair or cut down or
qualify the preceding definite devise; *third,* the elimination of
that clause, however, does not so change the testator's scheme
of disposing of his property as to destroy the other definite
clause, or, by holding it valid, make a new and different will
for him.

4. ———: **Void Clause: No Administration.** A clause in a will
which directs the executor to administer the estate "without
going into court or taking letters testamentary" is violative of
public policy and void; but it does not destroy the will in other
respects.

5. ———: **Changing Scheme: Definite and Indefinite Clauses.**
Where there is a definite clause giving to devisees for life the
full usufruct and earnings of a definite portion of the estate,
and that is followed by an indefinite, uncertain and ambiguous
clause which cuts down or qualifies that definite devise and

is for that reason void, to eliminate it will not destroy the definite clause or the whole will, when, by eliminating it, the general plan of the testator to divide his property among his children according to a definite scheme remains apparent and unimpaired.

Appeal from Ray Circuit Court.—*Hon. J. W. Alexander,* Judge.

AFFIRMED.

*Lavelock & Kirkpatrick* for appellants.

(1) The intended plan and scheme of the testator in devising and bequeathing his estate to and dividing it among the beneficiaries named in his will, including his design and purpose for so giving his property to be held thereunder, will be effectuated, if such plan and scheme can be definitely determined therefrom, provided it violates no fixed rules of law; but in ascertaining his testamentary scheme, void as well as valid provisions of the will must be considered alike, for it is not to be presumed the testator knowingly incorporated illegal clauses, terms or articles in his will; i. e., the testator's dominant purpose in making the will must be gleaned from the four corners of the instrument as executed. 30 Am. and Eng. Ency. Law (2 Ed.), 661; Watson v. Watson, 110 Mo. 170; Jorboe v. Hey, 122 Mo. 348; Mersman v. Mersman, 136 Mo. 256; Cross v. Hoch, 149 Mo. 336; Dozier v. Dozier, 183 Mo. 146; Brooks v. Brooks, 187 Mo. 487; Grace v. Perry, 197 Mo. 559; Hawley v. James, 16 Wend. 144; Tilden v. Green, 130 N. Y. 55; Brandt v. Brandt, 13 N. Y. Misc. 433; In re Young Estate, 123 Cal. 343; In re Fair Estate, 132 Cal. 544; In re Walkerly Estate, 108 Cal. 651; Lehnhoff v. Theine, 184 Mo. 357. (2) Dependent provisions of testator's scheme must stand or fall together. Courts cannot eliminate void parts of testamentary scheme and execute valid portions,

for to do so would effectuate plans and distribution different from those of testator. It takes the illegal as well as the legal parts to constitute the testator's scheme. If the court should reject the void provisions — dependent provisions of the testator's scheme — and enforce the legal ones, by such a process of elimination a very different plan and will might be effectuated by the court from the one intended by the testator, i. e., the court might carry out and effectuate a wholly different division of the estate from that intended by the testator. The void provisions of a will are as indispensable in ascertaining the testator's plans as the valid portions; all to him were equally vital and equally valid, and for the court to reject and disregard one part and execute the other, which the testator must have considered of equal importance, would not only establish a dangerous precedent, but, in most instances, thwart and defeat the testator's purposes. It is far preferable that intestacy — partial or total — should follow, and the estate be divided under the law of descent and distribution, than that such unwarranted authority to change or make a will, should be exercised. 30 Am. and Eng. Ency. Law (2 Ed.), 864; Gray on Perpetuities, secs. 630, 631, p. 378, 379; Lockridge v. Mace, 109 Mo. 168; Leake v. Robinson, 2 Meriv. 363; Coster v. Lorillard, 14 Wend. 350; Hawley v. James, 14 Wend. 144; Benedict v. Webb, 98 N. Y. 466; Tilden v. Green, 130 N. Y. 46; In re Butterfield Will, 133 N. Y. 476; Brandt v. Brandt, 13 N. Y. Misc. 432; In re Johnston's Estate, 185 Pa. St. 179; In re Fair Will, 132 Cal. 527; In re Fair Will, 136 Cal. 80; Connolly v. Union Sewer Pipe Co., 184 U. S. 565.

*James L. Farris, Jr.,* and *Sandusky & Sandusky* for respondents.

(1)  The 5th item of the will created a trust estate in favor of Lydia Ann Woodson for life, with alter-

nate contingent remainder: (a) To her bodily heirs, if any, living at her death; but, (b) in default of such issue, living at her death, to Harrie P. Woodson and his bodily heirs. And a like separate trust estate to Virginia E. Sevier, for life, with like alternate contingent remainder. Watson v. Smith, 110 N. C. 6; 2 Washburn on Real Prop., ch. 4, sec. 3, subsec. 23; Tiedeman on Real Prop., pt. 2, ch. 12, sec. 415; Reeves on Real Prop., Special Subjects, sec. 591; Leppes v. Lee, 92 Ky. 16; Furnish v. Jones, 154 Ill. 569; Waddell v. Rattew, 5 Rawl. 231; Godman v. Simmons, 113 Mo. 122; Emmerson v. Hughes, 110 Mo. 627; R. S. 1899, secs. 4593, 4594. (2) The trust will terminate on the death of the life tenant. Sears v. Choate, 146 Mass. 495; Battle v. Petway, 5 Ired. Law 576; Turnage v. Green, 2 Jones' Eq. 63; 28 Am. and Eng. Ency. Law (2 Ed.), 947; Garesche v. Inv. Co., 146 Mo. 436. (3) The 5th item of the will on its face shows that the trust estate to Lydia Ann Woodson and the trust estate to Virginia E. Woodson, now Sevier, are separate trust estates, and that on the death of either the trust as to her ceases, and the corpus of her estate (which the trust was intended to preserve for the contingent remainderman) passes instanter to the contingent remainderman — her issue, if she has any living, if not, then to Harrie P. Woodson and to the heirs of his body. (4) The will is not affected by the invalidity of that part of "item 8th" which provides that the executor should manage and control his estate "without going into court, or taking letters testamentary." Southworth v. Southworth, 173 Mo. 59. (5) The concluding sentence of "item 5th" is expressed in language as clear and unequivocal as the words devising the two life estates; if it qualifies the prior life estates devised to the two daughters, respectively, it is a qualification which the testator had the right to make; but if the clause be held invalid, the residue of the will is not thereby

affected. Underwood v. Cave, 176 Mo. 1; Lewis v. Pitman, 101 Mo. 281; Smith v. Bell, 6 Peters (U. S.) 68; Van Schuyner v. Mulford, 59 N. Y. 426; Underwood v. Curtis, 127 N. Y. 541; Landers v. Bell, 61 Conn. 189; Lovering v. Worthington, 106 Mass. 88.

GRAVES, J.—This is an action to construe the will of Thomas P. Woodson, instituted in the circuit court of Ray county, by Virginia E. Sevier, formerly Virginia E. Woodson, one of the devisees in said will, and her husband. It becomes necessary to set out the whole will. This will is in words, as follows:

"In the Name of God, Amen:

"I, Thomas D. Woodson, of the city of Richmond, in the county of Ray and State of Missouri, being of sound and disposing mind and memory and in good health, but knowing the uncertainty of life and having an earnest desire to make disposition of my means and property to and among my dear children, and to give to them such and so much of my property as I desire each shall have, do make, ordain and publish this as and for my last will and testament:

"Item 1st. It is my will and desire that all my just debts be first paid.

"Item 2d. I will and desire that two thousand dollars be loaned out on real estate security for the benefit of my dearly beloved mother, Huldah Ann Woodson, and that the interest be paid to her as is needed for her comfort and maintenance for and during her natural life, and after her death said amount to go to my children.

"Item 3d. I will, desire and direct that one thousand dollars be given the Board of Trustees of the Conference Fund of the Missouri Conference of the Methodist Episcopal Church, South, to be loaned and the interest accruing thereon to be paid annually to

and in support of superannuated preachers of said conference and their widows and orphans of same.

"Item 4th. I will and bequeath to my son Harrie Philip Woodson, my two-thirds interest in lot number ninety-seven, including store building and appurtenances thereto, in Old Town now city of Richmond, Ray county, Missouri, for which property he is to be charged the sum of two thousand dollars.

"Item 5th. I will and devise to each of my daughters, Lydia Ann Woodson and Virginia Elizabeth Woodson, each one-third of my estate for and during their lifetime, then to go to their bodily heirs, if any, if not then to their brother, Harrie P. Woodson, and his bodily heirs, and it is my will and I hereby so direct, that the share, interest and estate hereby devised be held in trust for each of them and their only and sole use and benefit by their brother, Harrie P. Woodson, who is hereby appointed and created their trustee, and I further direct that he be not required to give any bond or security as such trustee. *And I further direct and will that he, the said Harrie P. Woodson, trustee as aforesaid, pay over to each of said sisters as much of the interest accruing on the means hereby devised to each of them as will abundantly provide for their comfort and necessities.*

"Item 6th. I further will and devise that the remaining third of my estate go to my son, Harrie Philip Woodson, absolutely.

"Item 7th. I hereby nominate, constitute and appoint my son Harrie P. Woodson, the executor of this my last will and testament and direct that he be not required to give bond or security as above directed as trustee for his sisters.

"Item 8th. *I will and direct that my son, as executor and heir as aforesaid, manage and control my estate, hold and divide the same without going into court or taking letters testamentary.*

"Item 9th. It is my will and I hereby authorize and empower my said executor to sell, on such terms as he may think best, any or all real estate that I may have and own, and upon sale, to make and execute and deliver as such executor, deed or deeds conveying the same.

"Item 10th. It is my will and I hereby direct, that my brother Philip J. Woodson take complete charge of and manage our partnership matters and business, as survivor, and as fast and as soon as he can divide and pay over to my executor my two-thirds interest in said partnership assets or estate, and I further will and direct that said brother be not required to give bond in and about such partnership business.

"In Witness Whereof, I have hereunto signed my name and affixed my seal. This 11th day of April, A. D. 1885.

"THOMAS D. WOODSON, (Seal.)"

The plaintiff in her petition sets forth the contentions of the parties in full and with great precision. It will not be necessary to reproduce them here. Suffice it to say that the fifth and eighth paragraphs are alleged to be invalid and void, and that by reason thereof the whole scheme of the testator has failed, and all that portion of the will disposing of the bulk of the estate is of no effect and invalid.

The real fight is upon the last clause of the fifth paragraph and the eighth paragraph. With these eliminated, plaintiff claims that the whole will must fail.

The prayer of the petition reads thus:

"Wherefore, the plaintiffs herein pray for an order, judgment and decree of this court for the determination of the validity or invalidity of the items of said will hereinbefore mentioned and if for any

205 Sup—14

reason the same or any part thereof be invalid or inoperative, that they be so adjudged and decreed, and that the legal effects of such invalidity on the remaining portions of said items be declared, and that if the intended scheme of the testator cannot be carried out by the execution of the valid portions of said items, and the testator's scheme and purposes as expressed therein be effectuated, on account of the illegality of other parts thereof, then that the whole of said items be declared void, and if the whole of said items are valid, then for a construction thereof, and for a decree adjudging the rights of said plaintiff in and to the property of said testator disposed of or attempted to be disposed of by the items of his will aforesaid, under said will, if it be valid, or under the law, if it be invalid, and for instructions and directions, for future guidance and protection of the interests of said plaintiff and the parties to this suit, and for such other and further orders, judgments and decrees touching the premises as to equity and justice my seem right and proper.''

All parties necessary were brought in as defendants and filed appropriate answers.. We think the real contentions fairly appear from the above, and further analysis of the pleadings superfluous. Thomas D. Woodson died August 28, 1902, leaving three children, viz.: plaintiff, Virginia E. Sevier, and defendants, Harrie P. Woodson and Lydia Ann Woodson, an invalid. Upon a hearing, the trial court found these portions of the will which we have italicized to be void and non-effective.

Plaintiffs appeal.

I. The trial court was of opinion that the latter portion of clause five of this will was void, and was further of the opinion that the eighth clause was void. To this extent the judgment of the trial court was in favor of the plaintiffs and against the contentions of

defendants. But plaintiffs go further and contend that if these portions of the will are void, then the whole scheme of the testator's devise has been broken, the scheme fails, and the whole devise in said clause five contained and other dependent clauses, must fail and be by the court declared void, which would leave the deceased as if dying intestate save and except as to some minor bequests contained in the will. It occurs to us that the real questions, although verbosely stated in the pleadings, may be summarized thus: (1) Does clause five contain a valid and enforceable devise, and under the law should it be enforced? (2) If as a whole, it cannot stand, can a portion thereof be eliminated so as to leave a valid and enforceable devise? (3) Is the eighth clause violative of law? (4) If clause five or any portion thereof cannot be sustained, and clause eight cannot be sustained, then does the elimination of such condemned portions of the instrument so change the general scheme of the disposition of the property in the mind of the testator at the making of the will, as to compel the court to say that there is no will in this respect. In other words, if we find invalid portions to be in the instrument, do these invalid portions, when taken out of the instrument, so change the instrument as not to give effect to the general scheme and purpose of the testator in the disposition of his property? These questions we take in their order. In so doing we must and do recognize that it is the duty of courts to construe and not to make wills; that wills may be valid in part and invalid in part; that in determining what was the real scheme of disposition in the mind of the testator, the valid and invalid portions must be alike considered, and this for the reason that the presumption must be indulged that the testator in formulating his scheme of disposition thought all portions legal and valid; that if the elimination of the invalid portions, if any there be, so

changes the general scheme and purpose of the testator as would make the remaining portions amount to a new and different will, then the whole devise must fail.

II.  With due regard to the views of construction herein above stated let us proceed to consider clause five of this will.  No objection is or could be urged as to the preceding clauses.  Nor in our judgment could there be any objection urged as to clause five, if it be stopped with the first provision, to-wit: "I will and devise to each of my daughters, Lydia Ann Woodson and Virginia Elizabeth Woodson, each one-third of my estate for and during their lifetime, then to go to their bodily heirs, if any, if not, then, to their brother, Harrie P. Woodson, and his bodily heirs, and it is my will and I hereby so direct, that the share, interest and estate hereby devised be held in trust for each of them and for their only and sole use and benefit by their brother, Harrie P. Woodson, who is hereby appointed and created their trustee, and I further direct that he be not required to give any bond or security as such trustee."

This clause of paragraph five in our judgment gives to each of the two daughters a life estate in one-third of the residue of the decedent's property, after minor bequests are satisfied.  But this interest or beneficial life estate is placed in trust, so as to give to each daughter the earnings of said life estate, as their absolute property, the corpus itself to be preserved.  Upon their death this corpus to go, first, to their respective bodily heirs, and if there are no such bodily heirs, then to H. P. Woodson "and his bodily heirs."  By the use of the term "each one-third of my estate for and during their lifetime" there is created two estates, one to the plaintiff, Mrs. Sevier, and one to the defendant, Lydia Ann Woodson, each of which is placed in trust, the usufruct or earnings going respectively to the beneficiaries therein named.

Under this clause, or portion of the fifth para-
graph of the will, there can be no question that
the beneficiaries are entitled to the full pro-
ceeds of the trust property and such proceeds become
their individual property and cannot be added to the
corpus of the trust fund. With only this clause in the
will, upon the death of either beneficiary therein, the
corpus (the third part of the whole residuary estate)
thus preserved by the trust, would vest as by the will
directed, but the earnings whether in the hands of
the trustee, or in the hands of the deceased beneficiary,
would be a part of the estate of such deceased bene-
ficiary and pass by the law of descents and distribu-
tions, or in accordance with the terms of such bene-
ficiary's will, if any she had made.

By the latter portion of paragraph five, the tes-
tator undertakes, in a vague, uncertain and indefinite
way, to limit the amounts of the earnings of the corpus,
which are to go to the beneficial owners of the life
estate. By the first portion, the beneficiaries were en-
titled to it all; by the latter, they are presumably only
entitled to such portion "as will abundantly provide
for their comfort and necessities." This might be all
of such earnings, or it might be none. If the beneficiary
had no "comfort and necessities" to be provided for,
then it might mean that none of the interest or earnings
should go to that beneficiary so situated. In other
words, if either of these two daughters had the good
fortune to be possessed of the comforts and necessities
of life, in property, other than the property described
in this will, such beneficiary, so conditioned, would not
be entitled to any of the interests or earnings of the
trust estate held for her. And if she was partly sup-
plied with the comforts and necessities, then she would
only be entitled to such portion of the interest or
earnings as would make the quantum of her "comfort
and necessities." This quantum, as we take it, to be

judged by the trustee. So at least, there are two ele-
ments which render the amounts, if any, to be received
by the respective beneficiaries of these two trusts, un-
certain, viz.: (1) the condition of the beneficiary, as to
whether or not any portion was required, in order that
she have the comforts and necessities of life, and, (2)
the judgment of the trustee as to what are comforts
and necessities, and the amounts necessary to furnish
them. At least this is one view which might be taken
of the meaning of this clause. It might be viewed,
however, as meaning that notwithstanding the bene-
ficiary had other means of "comfort and necessities"
yet she would be entitled to receive from the earnings
of this trust estate sufficient to meet the requirements
of her "comforts and necessities." If this construction
could be given it, we would still be met with uncertain-
ty, thus: (1) One's station in life determines in a
measure what are comforts and necessities, and (2)
the judgment of the trustee as to the amount required
for the same, as well as his judgment upon the station
in life.

In reaching a conclusion as to the validity of this
latter portion of the fifth paragraph of the will, it
must be remembered, that with the exception of cer-
tain small bequests, by this paragraph, with paragraph
six, which gives one-third of the estate absolutely to
H. P. Woodson, the whole estate is disposed of and
taken into consideration.

We take it to be well-settled law that where a cer-
tain estate is granted in plain and unequivocal lan-
guage in one clause of a will, the same cannot be
lessened or cut down by a subsequent clause of the will,
unless the language used in such subsequent clause is
as clear, plain and unequivocal as the language of the
first grant.

In Banzer v. Banzer, 51 N. E. l. c. 293, the New
York Court said: "Where an estate is given in one

part of a will in clear and decisive terms, that it cannot be taken away or cut down by raising a doubt as to the meaning or application of a subsequent clause, nor by any subsequent words which are not as clear and decisive as the words giving the estate, is a well-established rule applicable to the construction of wills. As was said by Judge O'BRIEN in Goodwin v. Coddington, 154 N. Y. 283, 286, 48 N. E. 729, 730: 'Whenever the will begins with an absolute gift, in order to cut it down the latter portion of the will must show as clear an intention in that direction, as the prior part does to make it.'. In Clark v. Leupp, 88 N. Y. 228, 231, this court said: 'It is well settled by a long succession of well-considered cases that, when the words of the will in the first instance clearly indicate a disposition in the testator to give the entire interest, use, and benefit of the estate absolutely to the donee, it will not be restricted or cut down to any less estate by subsequent or ambiguous words, inferential in their intent.' "

Our court has followed the New York Court. In Chew v. Keller, 100 Mo. l. c. 369, we said: "Again, an estate in fee created by a will cannot be cut down or limited by a subsequent clause, unless it is as clear and decisive as the language of the clause which devises the real estate. [Freeman v. Coit, 96 N. Y. 63; Byrnes v. Stillwell, 103 N. Y. 453; Landon v. Moore, 45 Conn. 422.]"

And again, in Small v. Field, 102 Mo. l. c. 127, it is said: "Under this statute it is obvious that the absolute estate in fee granted to Mrs. Kate Green could not be impaired, cut down or qualified except by words as affirmatively strong as those which conveyed the estate to her. Such has been the ruling upon similar statutes elsewhere. [Roseboom v. Roseboom, 81 N. Y. 356, and cases cited.] And this seems to be the proper rule to apply apart from any statutory regulation.

[Lambe v. Eames, L. R. 10 Eq. Cas. 266; Thornhill v. Hall, 2 Clark & Fin. loc. cit. 36; Clark v. Leupp, 88 N. Y. 228, and cases cited.]''

And to the same effect is Yocum v. Siler, 160 Mo. l. c. 289; Roberts v. Crume, 173 Mo. l. c. 580; Roth v. Rauschenbusch, 173 Mo. l. c. 593, 594; Underwood v. Cave, 176 Mo. l. c. 12, 13.

Measured by these rules the latter clause of paragraph five of this will is in our judgment void and of no effect. The trial court so held and we think correctly.

III. The next question presented is the validity of the eighth paragraph of this will. As will be seen this expresses the preconceived notion of the testator, that by an *obiter* in his will, he could overturn the statutes of the State upon the subject of administration of estates. In this the testator was wrong. Such a provision is in our judgment violative of public policy, and violative of public policy as expressed by the statutes of this State. The testator has no inherent right to keep his estate from the courts given jurisdiction to administer the same. To declare such a policy would be a very dangerous precedent. This court has heretofore indicated the views we entertain upon this question. [Southworth v. Southworth, 173 Mo. 59.] We, therefore, hold this paragraph void and of no effect. This was the view entertained by the learned trial judge, and we but add our approval to his judgment thereon.

IV. We now reach the problematical part of this contest. Plaintiff claims that with the portions eliminated, as we have here indicated should be eliminated, then the whole scheme of the testator for the disposition of his property has been changed, and what is left does not express the will of the testator. If this is true then the whole of paragraph five and

paragraph six must fail, for in these two paragraphs we find the general scheme of the testator for the disposition of his property. We do not agree with counsel for the plaintiff in their contention that paragraph eight of this will seriously affects or becomes a part of the testator's general scheme. This general scheme we think is found in paragraphs five and six, for in these the bulk of the estate receives its disposition. Paragraph seventh simply provides the instrument or person for the execution of the will, and paragraph eighth simply expresses an erroneous idea of the power, which the testator thought he could invest in this instrument or agent. Both of these paragraphs could be stricken from the will, and yet the general scheme of the testator as to the disposition of his property remain intact. So that as to the effect of eliminating the eighth paragraph we find no trouble. The serious question is in the elimination of the last clause of the fifth paragraph. We find no case exactly in point. All will cases are decided upon the peculiarities of the different instruments presented, so that in the cases we have judicial expressions peculiarly applicable to the instrument then before the court in each case. At best the cases but suggest thoughts of value in the consideration of the question in hand.

Reverting to the sole proposition left in this case, we are asked to say that by striking from this will the last clause of paragraph five, the whole scheme of the testator has been changed, and we would therefore be making for him a new will, if the remainder were permitted to stand as his will. We think not. What was the general scheme of the testator, for the disposition of his property? This can be determined by what he says as to the bulk of the property. The minor gifts cut but little figure in this case. But answering our own question, what was testator's general scheme, as appears from this will, and gathering such intent from

within the four corners thereof, and considering valid as well as invalid portions? First, we find a purpose to husband and hold the property in the hands of the testator's blood relatives. Second, we find a desire upon his part that the son have one-third of his estate absolutely, thoroughly in keeping with the first general purpose. Third, we find the desire upon the part of the testator, that each of his daughters have the benefit of one-third of his estate, for and during their life, with remainder over to testator's blood relatives, likewise in keeping with the first-named general purpose. The only change contended for by plaintiff, save and except such as she imagines comes through the striking out of the eighth paragraph, is this, that with the last clause of paragraph five stricken out, plaintiff has a full life estate in trust, but with that clause in the will she has less than a life estate, and for that reason we have changed the scheme of disposition by striking out such clause.

In this plaintiff argues too much. Clauses of wills may be invalid for several reasons. They may violate express statutes, as in the Fair will, 132 Cal. 523; they may violate public policy; they may be too indefinite and uncertain to be enforced at all by the courts, as in Board of Trustees v. May, 201 Mo. 360; or they may be too indefinite and uncertain in terms to overcome previous express, clear and definite terms theretofore found in the same instrument, as in the case at bar. There may be other reasons for invalidity of specific clauses in wills, but these will suffice to illustrate the idea we have. But for whatever reason the clause or clauses are declared invalid, it does not always follow that the general scheme of the testator has been changed and the whole will must fail. However, the reason for declaring the clause invalid may lend some light upon the question as to whether or not the general scheme has been changed by the

elimination of the particular clause.   In the case at
bar had the last clause of paragraph five been as clear,
definite and certain in its terms, as was the grant ex-
pressed in the first part of said paragraph, then it
would have modified and changed the first, and we
would have had there an expression of the scheme
of the testator.   But we have held upon the contention
of the plaintiff that the language here used was too
indefinite, uncertain and ambiguous to modify the first
clause, and therefore by parity of reasoning, it must
be too indefinite and uncertain to express any general
scheme of the testator.   Plaintiff is in the attitude
of saying that it is too indefinite, uncertain and ambig-
uous, to modify the scheme of disposition as expressed
in the first clause, yet it is clear, definite and certain
enough to show a scheme of disposition other than that
expressed in the first clause, and when we cut it out,
the scheme as left in the first clause is not the general
scheme of disposition in the mind of the testator.   We
cannot assent to this reasoning.   If by cutting out this
last clause we have written for the testator a new
will, it must be because there is such definite and
certain language in the last clause as would show a
scheme and purpose of disposition within itself.   If
it is definite, clear and certain enough to show that,
then it is definite, certain and clear enough to modify
the first clause, and we have erred in cutting it out as
invalid.   We are not satisfied that the elimination of
this latter clause so changes the general scheme of the
testator as to invalidate this will, or even paragraph
five and six thereof, which are the dependent para-
graphs.   We think this can be cut out, and the general
scheme as heretofore outlined still remain.   We have
read with care the judgment entered by the learned
trial judge, and it sufficiently covers the full situation
of this case.   In this judgment, which upholds the will,
save and except the two clauses indicated as invalid,

and construes the remaining portions of the will, the trial court was right, and the judgment is affirmed.

All concur, except *Woodson, J.,* not sitting.