HENRY LEE THORNBROUGH et al., Appellants, v. AZEL S. CRAVEN et al.

In Banc, November 20, 1920.

1. **WILL: Probate: Proof.** A will, bearing a certificate of probate conforming in all respects to the requirements of the statute, both admitted without objections, will be assumed, on appeal, to have been admitted to probate; and it will also be assumed, in the absence of any evidence to the contrary, where there was no objection to the sufficiency of the certificate as proof of its probate and none to the admissibility of the will, that the probate court was in session at the time proof of the will was made.

2. ————: **Devise of Real Estate: Sale: Substitution.** Where the will devised 180 acres, and afterwards testator sold it, and bought another tract of 90 acres, which he evidently by a codicil intended to substitute for the specific 180 acres described, the provisions of the will are to be applied to the ninety acres so purchased.

3. ————: **Interpretation: Omission of Heirs and Assigns: Purpose of Statute.** The purpose of Section 579, Revised Statutes 1909, providing that "in all devises of lands or other estate in this State, in which the words 'heirs and assigns,' or 'heirs and assigns forever,' are omitted," etc., was to abolish the necessity for words of inheritance in the devise of lands as they were abolished in the grant of estates *inter vivos;* otherwise, the section was a reaffirmation of the rule of the common law as it had always existed. The subsequent expressions used in said section, namely, that if "no expressions are contained in such will whereby it shall appear that such devise was intended to convey an estate for life only, and no further devise be made of the devised premises, to take effect after the death of the devisee to whom the same shall be given, it shall be understood to be the intention of the testator thereby to devise an absolute estate in the same, and shall convey an estate in fee simple in the devisee," are purely cautionary, and were evidently intended to make it certain that the well settled rule of the common law which they expressed was not to be taken as repealed or abrogated.

4. ————: **Devise of Absolute Estate: Effect of Subsequent Clauses.** Where property is devised in clear language sufficient to convey an absolute fee, the interest thus given is not taken away, cut down or diminished by any subsequent vague and general ex-

pression.  If it is clearly the intention of the testator .that the devisee shall own the fee simple, his subsequent language directing that what remains of the property at the death of that devisee shall devolve upon a particular person, or class of persons, will not cut down the fee to a life estate,  Especially is this the rule, where the language disposing of "that portion which remains" applies, as shown by the context, to personalty, and not to the real estate previously given in fee.

5. ———: ———: ———: **This Will.**  By the second clause of his holograph will testator gave to his wife "my real estate," consisting of one hundred and eighty acres of land specifically described, "and all other realty that I may own at the time of my death;" by the third clause he gave "for her use and benefit all the rest and residue of my property of whatever kind that may remain after payment of my debts;" by the fourth clause he authorized and empowered his said wife "to sell and dispose of any part, parcel or the whole of my estate at her own option and election, to make deed or deeds conveying all the right, title and interest to said realty for all purposes as if I was present and signed the deed or deeds;" the fifth clause declared that "it is my desire and I hereby will that after the payment of my debts my wife shall have all the residue of whatever kind, to use for her support, protection and comfort and enjoyment during her natural life;" by the sixth clause he authorized her "to dispose of any amount by will not to exceed one-half of all 'the, estate remaining after all expenses have been paid for her last illness and burial;" and by the seventh clause he declared that "it is my will that all that portion of my estate remaining undisposed of as hereinbefore authorized and directed be divided into eight equal shares and that one share go to each of my brothers and sisters."  *Held*, *first* that by the second and third clause, the testator divided his estate into two distinct parts, one of which, by the second clause, he designated as "real estate" or " realty," and the other, by the third clause, he designated as "all the rest and residue of my property," or as personalty; *second*, by the second clause, he devised to his wife in clear language an absolute fee in the real estate; *third*, the power of disposition expressed in the fourth clause . had no effect to reduce to a life estate the fee given by the second; *fourth*, the limited power of disposition, if intended to apply to the land, is inoperative, because a mere incident to the fee already given; *fifth*, the third and fifth clauses operated only on his personalty, "for her use and benefit," with · power to sell it for her "support" etc; and, *sixth*, the seventh clause did not make a further devise of the real estate to his brothers and sisters, but operated only on "that portion of my estate remaining undisposed of," as a single fund, to be divided as in case of money, by a single process.

6. ———: **Devise of Fee: Further Power of Disposition.** An authorized power of disposition will never have the effect to reduce to a life estate a fee already clearly given, for the reason such a power is simply an incident of the fee, and cannot either enlarge or cut down the fee.

Appeal from Ray Circuit Court.—*Hon. Arch B. Davis,* Judge.

REVERSED AND REMANDED.

*Crowley & Jacobs* and *Garner, Clark, Milligan & Garner* for appellants.

(1) The second clause of the will is broad enough to vest the fee in Gabriella Craven. (2) Where the language of first clause is sufficient to grant the fee, this will not be cut down to a lesser estate, except by language as clear and unambiguous as that contained in the first clause. Middleton v. Dudding, 183 S. W. 443; Cornet v. Cornet, 248 Mo. 184; Cornwell v. Waillf, 148 Mo. 542; Wead v. Gray, 78 Mo. 59; Green v. Sutton, 50 Mo. 186; Cook v. Couch, 100 Mo. 29; Cornwell v. Orton, 126 Mo. 355; Yocum v. Siler, 160 Mo. 281; Roth v. Rauschenbush, 173 Mo. 582.

*Lavelock & Kirkpatrick* for respondents.

(1) According to the evidence contained in the abstract of appellants, the instrument in writing purporting to be the last will and testament of Azel P. Craven, deceased, was never admitted to probate. The probating of a will is a judicial act. The unconfirmed proceedings of the judge or clerk, in vacation, are insufficient. Snuffer v. Howerton, 124 Mo. 639; Barnard v. Bateman, 76 Mo. 414. (2) If the testimony of appellants fails to show, as we think it does, that the instrument in writing purporting to be the last will and testament of Azel P. Craven, deceased, was legally probated, and there being nothing to indicate that the widow, Gabriella Craven,

exercised the right of election accorded to her under
the statute, her interest in the real estate owned by her
husband, at the time of his death, under the present state
of the evidence, was, under our statute, restricted to a
life estate in one-third part thereof. Sec. 345, R. S. 1909.
(3) The intention of the testator must be gathered from
the whole will, and if possible, every clause in it should
have some operation and be effective for some purpose;
single clauses should never be considered singly, but the
whole instrument should be taken into consideration.
Eckle v. Ryland, 256 Mo. 441; Cornet v. Cornet, 248 Mo.
216; Cox v. Jones, 229 Mo. 63; Armor v. Frey, 226 Mo.
666; Grace v. Perry, 197 Mo. 559; Dozier v. Dozier,
183 Mo. 146; Underwood v. Cave, 176 Mo. 14; Walton
v. Drumtra, 152 Mo. 489; Cross v. Hoch, 149 Mo. 336;
Schorr v. Carter, 120 Mo. 413; Small v. Field, 102 Mo.
122; Russell v. Eubanks, 84 Mo. 86; Allison v. Chaney,
63 Mo. 282; State ex rel. v. McVeigh, 181 Mo. App. 566;
La Vaulx v. McDonald, 190 S. W. 604; Orchard v. Smith,
193 S. W. 573. (4) Under the last will and testament
of Azel P. Craven, deceased, his widow took a life estate,
with a limited power of disposition, remainder to the
brothers and sisters of the testator, bodily heirs of de-
ceased brothers or sisters taking the part the parent
would have taken, if living. Smith v. Bell, 6 Pet. 68,
8 L. Ed. 323; Chiles v. Bartleson, 21 Mo. 346; Carr v.
Dings, 54 Mo. 95; Carr v. Dings, 58 Mo. 404; Straat v.
Uhrig, 56 Mo. 484; Bean v. Kenmuir, 86 Mo. 668; Harbi-
son v. James, 90 Mo. 417, 425; Munro v. Collins, 95 Mo.
41; Lewis v. Pitman, 101 Mo. 287, 293; Redman v.
Barger, 118 Mo. 570, 575; McMillan v. Farrow, 141 Mo.
59, 63; Gibson v. Gibson, 239 Mo. 493, 507; Trigg v.
Trigg, 192 S. W. 1014; Schneider v. Kloepple, 270 Mo.
396. (5) In the fourth clause of his will, testator speaks
of the property given and devised to his wife as his prop-
erty, the exact words used are: "my estate" thereby
clearly indicative that he did not intend to devise to his
wife a fee simple estate, but a life estate only. McMillan

v. Farrow, 141 Mo. 63. (6) In the fifth clause of his will, testator makes it clear that the estate intended for his wife was for her use, support, protection, comfort and enjoyment during her natural life. In this clause, the testator, to make sure that there would be no misconstruction of the preceding clauses of his will, gives his own interpretation thereof, leaving no doubt as to the intended meaning. The rule is, when a testator interprets a particular clause in his will, the court, when called on to construe that clause, will follow the interpretation of the testator. Dugans v. Livingston, 15 Mo. 234; Reinders v. Koppelman, 94 Mo. 343; Small v. Field, 102 Mo. 129; State ex rel. v. McVeigh, 181 Mo. App. 581. (7) The devise to Gabriella Craven, in the second paragraph of testator's will, is in general terms, without qualifying words, denoting the extent of the estate devised, but the wording of the fifth paragraph, which is as follows: "for her support, protection, comfort and enjoment, during her natural life," makes it obvious that the estate granted in the second paragraph was intended to be for life only. Cross v. Hoch, 149 Mo. 343; Walton v. Drumtra, 152 Mo. 507; Gibson v. Gibson, 239 Mo. 506; Burnet v. Burnet, 244 Mo. 498. (8) In the seventh clause, testator refers to property remaining undisposed of. From this paragraph, it is apparent that it was the intention of the testator that all such remaining or undisposed of property was to be a part of his estate, and not a part of the estate of his wife. His exact words are: "That portion of my estate remaining undisposed of." McMillan v. Farrow, 141 Mo. 62. (9) The fact that other paragraphs in testator's will intervened between item two, in which the real estate is devised to Gabriella Craven, and items four, five, and seven, where it is made clear that the testator intended to devise to Gabriella Craven a life estate only, does not impair the legal effect of the three last mentioned items. Cox v. Jones, 229 Mo. 67. (10) The devisee in the second paragraph of testator's will, is Gabriella Craven.

In this devise, neither the words "heirs and assigns," nor the words "heirs and assigns forever" are used. The further devise by the testator, in a subsequent clause of his will, of the real estate there devised, to take effect after the death of Gabriella Craven, makes definite and certain the fact that Gabriella Craven does not take a fee under said second clause. Sec. 579, R. S. 1909.

BROWN, C.—This is a contest between plaintiffs, who claim as collateral heirs of Gabriella Craven, deceased, and the defendants, who claim as collateral heirs and devisees of Azel P. Craven, deceased, over the title to certain lands in Ray County described as follows: The east half of the southwest quarter and about ten acres off of the east side of the west half of the southwest quarter of Section 31, Township 54, Range 27. Azel P. Craven, and Gabriella Craven were husband and wife. He died in 1913, leaving a holograph will, duly signed, witnessed and executed, as follows:

"I, Azel P. Craven, of the County of Ray and State of Missouri, being of sound mind and disposing memory considering the uncertainity of life and being desirous to make disposition of my property, do hereby in my own handwriting make, ordain, establish and publish and declare this to be my last will and testament hereby revoking any and all wills heretofore made by me.

"1st. It is my will that all my just debts be first paid by executor hereinafter named.

"2nd. It is my will and I hereby bequeath unto my beloved wife Gabriella Craven the following real estate situate, lying and being in the County of Ray and State of Missouri, to-wit: All of the northeast quarter of the northeast quarter of Section Thirty-six (36), and sixty acres off of the east side of the east half of the southwest quarter of Section Thirty-six (36), also all the west half of the southwest quarter of Section Thirty-six (36), all in Township Fifty-four (54), Range Twenty-eight (28), containing one hundred and eighty acres more

or less, and all other realty that I may own at the time of my death.

"3rd. Also I will to my wife Gabriella Craven for her use and benefit all the rest and residue of my property of whatsoever kind that may remain after pay ment of my debts as hereinbefore requested.

"4th. It is my will, and to that end, I hereby authorize and empower my said wife Gabriella Craven to sell and dispose of any part, parcel or the whole of my estate at her own option or election, to make deed or deeds conveying all the right, title and interest to said realty for all purposes as if I was present and signed the deed or deeds.

"5th. It is my desire and I hereby will that after the payment of debts as hereinbefore directed that my wife Gabriella Craven shall have all the residue of whatever kind to use for her support, protection and comfort and enjoyment during her natural life and she is authorized to procure or cause to be erected lasting or permanent monument and inclosure to and around our graves.

"6th. It is my will and I hereby authorize my wife Gabriella Craven to dispose of any amount by will not to exceed one-half of all the estate remaining after all expenses have been paid for her last illness and burial.

"7th. It is my will that all that portion of my estate remaining undisposed of as hereinbefore authorized and directed be divided in eight equal shares and that one share go to each of my brothers and sisters and in case of their death or deaths then to the heirs of their respective bodies begotten.

"8th. It is my will and I hereby appoint my wife Gabriella Craven the executor of this my last will and testament, in witness whereof I have hereunto set my hand and affixed my seal this 5th day of February, A. D. 1890."

He afterwards added the following codicil:

"To all to whom this may come, know ye that on this the 18th day of April 1898, I make this the following

change in the foregoing to-wit: That real estate describ-
ed therein has been by me sold and that I now own in
fee simple all of the east half of the southwest quarter
and the southwest quarter of the southeast quarter of
Section Thirty-one (31), Township Fifty-four (54),
Range Twenty-seven (27).''

She died intestate in 1917, not having remarried
and leaving no descendants. He left no descendants.

The petition filed July, 1917, is in two counts. The
first is founded on the provisions of Section 2535, Re-
vised Statutes 1909, and sets out the will and other facts
respecting the plaintiff's claim of title, with the conven·
tional prayer. The second count is for partition among
the heirs of Gabriella Craven, A general demurrer was
filed to the first count, which was sustained by the court
and the cause proceeded to trial upon the second count
resulting in a final judgment for defendants on both
counts. Motions for a new trial and in arrest of judg-
ment were in due time filed by plaintiffs and overruled
by the court, and this appeal was thereupon duly perfect-
ed.

I.   The respondents suggest in this court, without
other explanation than to cite us to Snuffer v. Howerton,
124 Mo. 637, l. c. 639, and Barnard v. Bateman, 76 Mo.
414, that ''according to the evidence con-
tained in the abstract of appellants, the
instrument in writing purporting to be the last will
and testament of Azel P. Craven, deceased, was never
admitted to probate.''

*Probate: Proof.*

The record shows that plaintiffs offered ''the record
of the probate court showing the admission of said will
to probate and the order of court admitting said will
to probate,'' in words and figures following:-

''In the Probate Court of Ray County, Missouri.

''I, George Crowley, Judge and Ex-Officio Clerk of
Probate Court of Ray County, Missouri, having examin-
ed the foregoing instrument purporting to be the last
will and testament of Azel P. Craven, deceased, and

signed by the said Azel P. Craven, deceased, and having heard the testimony of said A. J. Kincaid, one of the subscribing witnesses thereto in relation to the execution of the same, and having heard the testimony of Wiley R. Lile, a son of George Lile, the other subscribing witnesses thereto in relation to the handwriting and signature of said George Lile, deceased, do declare and adjudge said instrument to be the last will and testament of said Azel P. Craven, deceased, late of Ray County, Missouri.

"In Testimony Whereof, I have hereunto set my hand and affixed the seal of said court at my office in Richmond, Ray County, Missouri, this 28th day of May, A. D. 1913.

"GEORGE W. CROWLEY.
"(Seal)     Judge and Ex-Officio Clerk of the
"Probate Court of Ray County,
"Missouri."

This was admitted without objection, nor was there any objection to the admission of the will. The certificate conforms in every respect to the provisions of Section 549 of the statute, and was spread upon the records of the court. If the court was not in session at the time the proof was made, the defendant should have known it at the trial and should have made their objection to the sufficiency of the proof and admissibility of the will. Had the will been introduced without any other evidence of probate than the statutory certificate thereon and without objection, it would now be too late to raise any question as to the sufficiency of the judicial action necessary to establish it.

II. The real and only question before us hangs upon the construction of the will, which we have copied in full in the foregoing statement. It appears that after Substitution. it was executed Mr. Craven sold the one hundred and eighty acres of land he had devised to his wife, purchasing ninety acres in an adjoining section, which he evidently intended to substitute

for the original tract, so that we shall assume that all the provisions of the second clause in the will apply to the ninety acres so purchased, which is the tract in controversy.

In this clause he gives to his wife Gabriella Craven "the following described real estate situate, lying and being in the County of Ray and State of Missouri, to-wit" (here follows a definite and detailed description of his real estate), "containing one hundred and eighty acres more or less and all other realty that I may own at the time of my death." By this clause he segregated his land from the remainder of this estate and did not again mention it in subsequent dispositions. That had he stopped there the devise would have given her an absolute title in fee simple cannot be doubted. The statute (R. S. 1909, sec. 579) provides that "in all devises of lands or other estate in this State, in which the words 'heirs and assigns,' or 'heirs and assigns forever,' are omitted, and no expressions are contained in such will whereby it shall appear that such devise was intended to convey an estate for life only, and no further devise be made of the devised premises, to take affect after the death of the devisee to whom the same shall be given, it shall be understood to be the intention of the testator thereby to devise an absolute estate in the same, and shall convey an estate in fee simple to the devisee, for all such devised premises." The question is here whether, in the subsequent clauses of this will, there are any expressions whereby it appears that this devise was intended to convey an estate for life only, or by which any further devise is made of the same premises to take effect after her death. If not she took an estate in fee simple absolute.

This is not only an interesting but a perennial question, which has vexed this court for many years, demanding fresh exposition of every new combination of words which the ingenuity of testators has presented. Lawyers who write wills acquire something of uniformity

*Interpretation.*

in expression, but in this case we have to deal with a holograph, in which not only the thoughts but the words of the testator give us new food for contemplation. A subsequent section of the statute (Sec. 583) requires us to ''have due regard to the directions of the will, and the true intent and meaning of the testator.'' This is a cautious and conservative command. It does not require us in all cases to carry out the directions of the will according to the intent and meaning of the testator, but recognizes the possibility that his intent and meanings may do violence to a rule of law established for the protection of all testators alike, as well as the objects of their bounty. Section 579, for instance, applies only to land which cannot be tossed from hand to hand, nor led by a halter, but to estates which must be measured by the words in which they are created and which the law must prescribe with uniformity and certainty.

The primary object of Section 579 was to abolish the necessity for words of inheritance in the devise of lands as they were abolished in the grant of estates *inter vivos*; otherwise, it was a reaffirmance of the rule of the common law as it had always existed. The subsequent expressions used in that section are purely cautionary, and evidently intended to make it certain that the well settled common-law rule which they expressed was not to be taken as repealed or abrogated. That rule is clearly stated by a learned commentator on the law of wills as it exists in this country, as follows: ''It is the rule where property is given in clear language *sufficient to convey an absolute fee,* the interest thus given shall not be taken away, cut down or diminished by any subsequent vague and general expressions. This rule is applied where a fee is given either expressly by words of limitation, as to a person and *his heirs,* or by implication by a devise in general language through the operation of the modern statutes. If it is clearly the intention of the testator that the devisee *shall own the fee simple,* his subsequent language directing that what remains

of the property at the death of that devisee shall devolve
upon a particular person, or class of persons, will not
cut down the fee to a life estate. The fee, being vested
by express and appropriate words, will not be diminished
by subsequent words of a vague and general character
which are absolutely repugnant to the estate granted.''
[Underhill on the Law of Wills, sec. 689.] This is the
rule so carefully guarded by the Legislature. It has
been carefully preserved· and frequently stated and ex-
plained by this court with reference to the statute we
have quoted until its meaning is no longer in doubt, and
its application has become greatly facilitated. From
these numerous expositions we will notice only a few
which refer particularly to the language by which the
testator may limit the estate which he has already de-
vised in fee simple.

In Chew v. Keller, 100 Mo. l. c. 369, we said:
''Again, an estate in fee created by a will cannot be
cut down or limited by a subsequent clause, unless it
is as clear and decisive as the language of the clause
which devises the real estate. [Freeman v. Coit, 96 N.
Y. 63; Byrnes v. Stilwell, 103 N. Y. 453; Landon v.
Moore, 45 Conn. 422.]'' In Small v. Field, 102 Mo. l. c.
127, we said: ''Under this statute it is obvious that
the absolute estate in fee granted to Mrs. Kate Green
could not be impaired, cut down or qualified except by
words as affirmatively strong as those which conveyed
the estate to her. Such has been the ruling upon similar
statutes elsewhere.''

In Sevier v. Woodson, 205 Mo. 202, we again had
occasion to expound this rule of construction and stated
it (p. 214) as follows:· ''We take it to be well-settled law
that where a certain estate is granted in plain and un-
equivocal language in one clause of a will, the same
cannot be lessened or cut down by a subsequent clause
of the will, unless the language used in such subsequent
clause is as clear, plain and unequivocal as the language
of the first grant.'' In Cornet v. Cornet, 248 Mo. l. c.

224, we again quoted and expressly approved the rule as
so stated.   And finally in Middleton v. Dudding, 183
S. W. 443, this court In Banc after a full review of the
question both upon principle and authority, approved
the same language in a case not differing materially in
facts from the one we are now considering.   We do not
think we would be justified in incumbering this record
with a special examination or even with the citations
of all the authorities upon which the doctrine expressed
in this rule has been too firmly established to be question-
ed.   They may readily be found by reference to the
cases already cited, and more especially in Sevier v.
Woodson, supra, and Middleton v. Dudding, supra, from
which it will appear that, in the interpretation of a stat-
ute similar to ours, it became firmly established in New
York upon reasoning so evidently sound that it has
been accepted and has become the rule of interpretation
in this State.   It is perfectly consistent with the pro-
vision of Section 583 which requires us to "have due re-
gard to the directions of the will and the true intent and
meaning of the testator."

We have already referred to the fact that estates in
lands must necessarily rest in some form of words, and
can only be made certain by giving certainty to these
words in the connection in which they are used.   To this
end the law requires that they be certain and clear so
that the estate shall not rest upon the mere opinion of
those whose duty it is to construe them as to the state of
mind of the dead by whom they were written.   To secure
this certainty is the office of all legal rules of construc-
tion and they must control us in the examination of this
will.

III.   It is not denied that the words of the second
clause are clear, conventional and unambiguous, and suf-
ficient of and by themselves to vest in the devisee an abso-
lute title in fee simple to the lands described, and this
affords the standpoint from which we must proceed to in-

Thornbrough v. Craven.

quire whether, in the subsequent clauses of the will, that estate is diminished to an estate for life by language equally clear and unambiguous. It is suggested by counsel that the intention of the testator might have been made more apparent by the use of the obsolete words of inheritance or some other words of volume or permanence. It is a sufficient answer to this that he employed the simple words which the law requires for that purpose. He segregated his land from all other items of his estate to which his will might attach and gave it to his wife when she should become his widow. Evidently realizing that he might during his lifetime acquire other lands he included all such other lands in his devise. In this way, with painstaking care he divided the estate which he might leave into two distinct parts, one of which in that clause he designated as ''real estate'' and ''realty.'' In the third clause he designated the remainder of the estate of which he might die possessed ''all the *rest and residue* of my property of whatsoever kind that may remain after payment of my debts as hereinbefore requested.''

Down to this point he had not only divided his estate into two parts, the first embracing his real estate and the second his personalty, charged with the payment of her debts, but had given her the first without any reference to the purpose of the gift, and the second ''for her use and benefit.'' There is nothing to indicate any thought to limit the absolute estate in the land which he had given her.

The fourth clause gives her the absolute right of disposition of the land so that she might sell and convey it at her own will, without any attempt to control or direct the disposition of the proceeds. While an absolute power of disposition may sometimes have the effect to raise a fee upon a devise which, without the power, would have only been effectual to carry a life estate, this does not follow in any case where the devise is limited by its terms to an estate for the life of the

devisee. The power of disposition must then be exercised in the life time of the devisee; if not, the remainder will pass upon his death to the next taker by devise or inheritance. [Underhill on Wills, sec. 686.] Such a power of disposition will never have the effect to reduce a fee to an estate for life, for the reason that it is simply an incident to the fee. This question was fully examined by us in Mildleton v. Dudding, supra, where the power was not created by mere redundancy of language in the writing of the will, but was deliberately added by a codicil. We held in effect that it was mere superfluity. It cannot enlarge the fee of which it is a mere incident and for the same reason cannot cut it down. The same may be said of the limited power of disposition by will given in the sixth clause. If it was intended to apply to the land, of which we see no evidence in its terms, it is inoperative because it is a mere incident of the fee already devised.

It is not, nor can it be, questioned that the third clause of the will operated upon personal property alone. It was given by the description of all the "rest and residue of my property" because the realty had already been disposed of. It was given "for her use and benefit" because the testator anticipated that the childless woman might not desire, after his death, to occupy the family home alone, and would desire to supplement its rents and profits with the proceeds of the personalty. He fully explained this in the fifth clause by giving her the fullest power to dispose of it for her use, "support, protection, comfort and enjoyment." That this supplements and explains the terms of the third clause, and applies exclusively to personalty, is evident. There is nothing in the words which exhibits any intention or thought to cut down the fee simple title already devised to his wife. From the standpoint of this conclusion we will consider the remaining provisions.

IV. The defendants' answer seems to us to have been written in fear of disclosing their title. It admits

that defendants are heirs of Azel P. Craven, deceased, and states that they are the owners of an undivided interest in the land, but does not commit them to an opinion upon the nature of their title—whether by devise or inheritance. It does state, however, that Gabriella Craven never had any inheritable interest in the land. We have already come to the conclusion, and held in the preceding paragraphs of this opinion, that the fee simple estate devised in the second clause of the will was not cut down to a life estate by anything contained in the succeeding clauses up to and including the sixth. It still remains to determine whether the disposition made in the seventh clause had that effect by virtue of the provisions of Section 579, Revised Statutes 1909, by which we must judge this title. That section extends its protection over the fee simple title in all cases where "no expressions are contained in such will whereby it shall appear that such devise was intended to convey an estate for life only, and no further devise be made of the devised premises, to take effect after the death of the devisee to whom the same shall be given." Having already determined that the will contains nothing to negative the intention which this section imputes to the testator to devise an absolute estate in fee simple by the terms of the second clause, it remains to consider whether by the seventh clause he made a further devise of the same premises to his brothers and sisters and the heirs of their bodies. If he did not, Gabriella died seized in fee simple of the land. If he did, such devisees take under the terms of the will, and not by inheritance.

The seventh clause is as follows, italics being ours:

"7th. It is my will that all *that portion of my estate remaining undisposed of* as hereinbefore authorized and directed be divided in eight equal shares and that one share go to each of my brothers and sisters and in case of their death or deaths then to the heirs of their respective bodies begotten."

We do not think that this amounts to a further devise of the *same premises* so carefully described and

given in fee in the second clause. The entire tenor of the will is inconsistent with this construction for the following reasons: First, the land was carefully segregated from the remaining estate and given to her by special devise separate from any other portion of the estate; second, it was treated throughout the will as having been finally disposed of and the personalty was called the "residue," or that which remained after the disposition of the realty; third, the power of sale of the realty contained in the fourth clause was accompanied by no direction as to the use or disposal of the proceeds which would, had she sold it, have been her own absolute property; and, fourth, clause seven does not treat the land as a part of the fund to be divided among the brothers and sisters of the testator, but treats the remaining portion of his estate as a single fund to be divided, as in case of money, by a single process. There is nothing in the entire instrument indicating that the testator intended that the fee in the land which he had disposed of to the wife should be reduced to a life estate, or that the land or its proceeds should go to his collateral relatives at her death. The success with which he avoided such an expression is one of the most interesting features of this will when we consider the simplicity of the language by which that purpose could be lawfully accomplished.

We do not think the title to lands should be made to depend upon what the courts may surmise might have been or was in the mind of a testator. The law has placed at his disposal simple words by which he may dispose of the land or any interest therein by will. In this case he has used them for the laudable purpose of conferring upon his widow the absolute title in this land. Had he desired to limit it to a less estate he could have done so subject to the limitations imposed by her marital rights by words as plain as those by which he conferred the fee, but this it seems to us he has declined to do, and we are not at liberty to do it for him. On the

other hand it is our duty to maintain the simplicity and certainty of expression by which the law guards such titles.

The judgment of the Circuit Court for Ray County is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Small, C.,* concurs; *Ragland, C.,* not sitting.

PER CURIAM:—The opinion of BROWN, C., is adopted as the opinion of Court in Banc. All concur except *Williamson* and *Goode, JJ.,* who dissent; *Blair, J.,* not sitting.