MARIE ALISE BARNHARDT and FORD HAYS BARNHARDT, Minors, by D. A. BARNHARDT, Their Curator, Appellants, v. EDWARD J. McGREW, JOSEPH O. LESUEUR, as Trustee, L. D. LESUEUR, and CARL WILSON HAYS, Respondents, and MAXINE HAYS, a Minor, Appellant.—5 S. W. 77.

Division Two, March 24, 1928.

*Aull & Aull* and *Henry C. Chiles* for appellants Marie Alise Barnhardt and Ford Hays Barnhardt; *George Vaughan* of counsel.

*Stephen N. Wilson* for apellant *Maxine Hays.*

*Henry Polk Lowenstein, Horace F. Blackwell* and *Lyons & Ristine* for respondents Edward J. McGrew, Joseph O. Lesueur, and L. D. Lesueur.

BLAIR, J.—The petition was in two counts, ejectment and partition. The case involves the title to a tract of land in Lafayette County, containing 272 acres. Judgment below went for defendants McGrew and Joseph and L. D. Lesueur. Plaintiffs and defendant Maxine Hays appealed.

William T. Hays was the common source of title. In January, 1887, he died testate and seized of the fee-simple title to said land and other lands, leaving surviving him as his sole heirs at law and devisees under his will his widow, Alice Belle Hays, and his sons, William T., born in April, 1866, Frank W., born in May, 1869, and Carl W., born in May, 1874, and his daughter Kate, born in June,

1884. None of said children had reached majority at the death of testator.

Kate married W. C. Barnhardt on August 20, 1903, and the children of that marriage were Marie Alise Barnhardt, born March 24, 1905, and Ford Hays, born July 1, 1907, who, by their curator, were plaintiffs in the case at bar. Kate died June 16, 1911, leaving said children surviving her. Kate's mother Alice Belle Hays, survived Kate, and died January 20, 1918, leaving as her sole heirs her sons, William, Frank and Carl, and her grandchildren, Marie Alise and Ford Hays Barnhardt, the children of Kate Hays Barnhardt, deceased.

Defendant Carl W. Hays was married January 21, 1901, and defendant Maxine Hays was born on December 10, 1903, as the sole fruit of said marriage. Carl Hays was living when his mother died, and when this suit was instituted, but he did not appeal from the judgment. It has been stipulated that he has died since the judgment was entered below.

On July 3, 1886, William T. Hays, as testator, executed his last will and testament. Items 2 and 3 thereof were as follows:

"Item 2. I give and devise to my wife, Alice Belle Hays, all my lands in Sections twenty-four (24) and twenty-five (25) in Township fifty-one (51), range twenty-seven (27) in Lafayette County, Missouri, being about 272 acres, to have and to hold for and during her natural life and at her death said land to go to my children Karl Wilson Hays and Kate Hays, and their heirs and assigns forever, provided, should one of said children die leaving no descendants then the other to have the entire estate, excepting, however, the coal underlying said land which with all necessary privileges upon the surface thereof for the convenient mining and removal of the same I hereby give and devise to my said wife absolutely.

"Item 3. I give and devise to my children William T. Hays, Jr. and Frank W. Hays all of my land in said County lying in sections nineteen (19) and thirty (30) township fifty-one (51) range twenty-six (26) containing about 300 acres, and to their heirs and assigns forever; should one of them, however, die childless before reaching the age of twenty-one years the other is to take the entire estate; this devise is, however made subject to the right of my wife to have and hold and use said lands and premises for the full term of five years after my death and to take and receive the rents, profits and proceeds thereof for said term of five years, and subject to the further right and power in my said wife to re-secure by mortgage or deed of trust upon said land the debt that may be existing thereon at the time of my death and interest thereon hereby giving my said wife full power and authority to bind said land for said debt, and make, execute, acknowledge and deliver all necessary mortgages or deeds

of trust for the full execution of said power. It is my intention, however, and I here make an ultimate charge for all such mortgages, debt and interest upon the land given to my wife in the next succeeding item.''

One week after the execution of said will testator added thereto the following codicil:

''I, W. T. Hays, of County of Lafayette, State of Missouri, do make this my codicil, to my will of July 3, 1886. I hereby extend the time for which my wife Alice B. Hays is to have and hold and use my lands in sections nineteen (19)' and thirty. (30) township fifty-one (51) range twenty-six (26) and is to take and receive and use the rents, profits and proceeds for the full term of eight (8) years after my death (instead of five (5) years as provided in will of July 3, 1886). I also hereby empower my wife Alice B. Hays to re-secure by mortgage or deed of trust any debts I may owe on any or all of my lands at the time of my death. In case of the death of any of my children in his or her minority or before the lands as provided in my will of July 3, 1886, come into their possession, his or her part of my estate is to be divided equally between the remaining heirs, my wife Alice B. Hays having the use of the same during her natural lifetime, to take and receive the rents, profits and proceeds thereof. In case my wife Alice B. Hays should die before the provisions of will of July 3, 1886, for the payment of my debts should have been carried out, I desire that my eldest son, W. T. Hays, Jr., and my nephew O. O. Wilson, shall succeed her as Executors of my estate, and O. O. Wilson I hereby appoint Guardian of my children who may be minors at my wife Alice B. Hays death.''

Without entering into unnecessary details, it is sufficient to say that, during the lifetime of both Alice Belle Hays and her daughter Kate, such proceedings in partition were had and such conveyances were executed and delivered that Kate undertook to acquire and assumed that she had acquired the fee-simple title to the land in controversy, including the life estate of her mother therein. Thereafter Kate and her husband executed a mortgage or deed of trust on such land to secure the payment of a note therein described. Said mortgage or deed of trust was afterward foreclosed. Defendant McGrew claims title to the land by successive conveyances from the purchaser at said foreclosure sale.

Defendant Joseph O. Lesueur is the trustee, and defendant L. D. Lesueur is the beneficiary, in a certain deed of trust upon said land securing the payment of two notes executed by defendant McGrew, aggregating $17,500 and interest. Neither of the plaintiffs nor defendant Maxine Hays were parties to said notes or deed of trust.

The land involved in this case is the land mentioned in item 2 of the will above quoted. Respondents contend that the language

of item 2 devised to Carl and Kate Hays a vested remainder in said land, subject to be defeated as to the undivided one-half interest of either by his or her death leaving no descendants; that, as Carl and Kate died leaving descendants, the contingency never happened and never could happen by which their title as remaindermen could be defeated. Respondents further contend that the subsequent codicil did not and could not have the effect of cutting down the devise to Carl and Kate, unless the language of said codicil is as clear, definite and unequivocal as the language of item 2. They contend that the language of the codicil is ambiguous and hence does not have such effect; that, as Carl and Kate took a vested remainder in the land and had the right to convey their said interests and did so, respondent McGrew acquired such interest and his interest could only be defeated by the happening of the event specified in item 2, to-wit, the death of Carl and (or) Kate leaving no descendants; that, as such event never happened and never can happen, it leaves respondent McGrew with fee-simple title in the land, subject only to the lien of the deed of trust held by the Lesueurs.

Appellants Marie Alise and Ford Hays Barnhardt contend that the codicil clearly evidenced the intent of testator to modify such devise so that the title would "vest in those of his blood at the date of the death of his widow" and not sooner; that, by the language of item 2, Carl and Kate took no title or interest in said land until the death of the life tenant. They contend that, as Kate was dead when the life tenancy terminated and never came into possession of the land, such remainder, under item 2 and under the codicil, then vested in the children of Kate, their mother; that as such children they are unaffected by the partition proceedings, to which they were not parties, or by any subsequent conveyances by their mother, designed to alienate the title, and that they now are the owners, in fee simple of an undivided one-half interest in said land, free and clear of any claims of respondent McGrew or those claiming under him.

We think that, by item 2 of the will, a life estate in the land was devised to testator's widow with remainder (except the underlying coal) in Carl and Kate, their heirs and assigns forever, subject to be defeated only by the death of either Carl or Kate without leaving descendants. That contingency not having occurred, the deed of trust executed by Kate, which was subsequently foreclosed, was sufficient to pass the title and cut off any interest the children of Carl or Kate might have, unless the codicil, the effect of which will be considered later, cut down the estate of Carl and Kate in said lands. By item 2 testator provided for and authorized conveyance by Carl and Kate, subject to the foregoing contingency, by devising the remainder to them, their heirs and assigns forever. Title could only

pass to "assigns" of Carl and Kate by assignments made by them in their lifetime.

In Yocum v. Siler, 160 Mo. 281, 61 S. W. 208, the land was devised to William F. Yocum absolutely, with the restriction that if devisee died without legal issue, etc., said land should pass to others named. Devisee left three sons surviving him at his death in 1892. In 1858 he had conveyed the land by warranty deed to one Norris and by mesne conveyances and under the provisions of a will, the title came to Mrs. Siler, the defendant, for life and thereafter to her children. It was held that, as the condition of William Yocum dying without issue did not happen and never could happen, the deed, made by William F. Yocum in his lifetime and before it was known whether or not the contingency might happen, conveyed good title to defendant's remote grantors and through them to the defendant.

In Gannon v. Pauk, 200 Mo. 75, 98 S. W. 471, Michael Gannon, the testator, devised the land to Michael Gannon, Jr., and Joseph E. Gannon "and unto their heirs and assigns forever" and provided that "should either of them die without issue then the survivor, his heirs and assigns to take, own and have the part and portion hereby bequeathed to the one so dying. And in the event both should die without leaving any issue, then," etc. Michael, Jr., and Joseph, during their lifetime and, of course, before it could be known whether either or both or neither would die leaving issue, conveyed whatever title they had to defendants' grantors. Thereafter both of them died leaving issue. It was held that Michael, Jr., and Joseph had the power to make disposition of the land, subject only to the possibility that such disposition might be defeated by the contingency that one or both of them should die without issue and, as that condition did not happen and never could happen, good title was passed to their grantees by the deeds executed by them in their lifetime.

The Yocum and Gannon cases, supra, were by Court en Banc and the authority of those cases has not since been questioned. In our opinion those cases very clearly require the holding in this case that, under item 2 of the will of William T. Hays, deceased, the title to the land in question (except the coal), subject to the life estate of their mother, was devised to Carl and Kate Hays and that they had good right in their lifetime to sell and dispose of all their right, title and interest therein, subject only to the possibility that the interest so sold and disposed of by them or either of them might be defeated by the happening of the contingency that one or both of them should die leaving no descendants. As both Carl and Kate died leaving descendants, such contingency did not happen and never can happen. In so far as item 2 is concerned, their grantees took good title. The cases of Collier v. Archer, 258 Mo. 383, 167 S. W. 511, and Brown v.

Tuschoff, 235 Mo. 449, 138 S. W. 497, and other cases cited by respondents also well support the foregoing conclusion.

It remains then to consider what effect the codicil had upon the estate of Carl and Kate devised to them by item 2 of the will. - A codicil will prevail over a prior inconsistent provision in a will, if such codicil is clear, definite and unequivocal in its language and meaning. There is no controversy in this case about that proposition of law. Yet a codicil, like a subsequent provision in the will itself, cannot cut down an estate or interest devised by a prior provision unless the language of such codicil, although inconsistent with the prior provision, is as plain, definite and unequivocal as the language of such prior provision. [Wells v. Fuchs, 226 Mo. 97, 1. c. 105, 125 S. W. 1137; Sevier v. Woodson, 205 Mo. 202, 1. c. 214, 104 S. W. 1; Payne v. Reece, 297 Mo. 54, 1. c. 60, 247 S. W. 1006.] Further citation of authority in support of this rule is unnecessary. Appellants do not controvert its correctness. They contend that the codicil is sufficiently clear, definite and unequivocal to meet the test above stated.

The only part of the codicil, which could be said to modify or cut down the estates granted to Carl and Kate in item 2, is as follows:

"In case of the death of any of my children in his or her minority or before the lands as provided in my will of July 3, 1886 come into their possession, his or her part of my estate is to be divided equally between the remaining heirs, my wife Alice B. Hays having the use of the same during her natural lifetime, to take and receive the rents, profits and proceeds thereof."

"Any of my children" necessarily included Kate and, if testator clearly intended to cut down the devise to her so that she would have no vested interest in the land before she actually came into possession, she, of course, could convey no interest, because she never came into possession of the land devised to her in item 2 and the interest she would have taken, had she survived her mother, would go to "the remaining heirs," when the life estate of the widow was terminated.

There are several considerations which suggest the thought that testator did not have in mind the devise to Carl and Kate in item 2 when he executed the codicil, notwithstanding the use therein of the all-inclusive words "any of my children." The intent of the testator, as said by LAMM, J., in Gannon v. Pauk, supra, "may be got at in various ways. One persuasive way would be to put our feet in his shoes and look at the situation through his eyes." We must try, as far as possible, to get at testator's viewpoint.

The will was executed in July, 1886. William T., Jr., was then twenty years old. Frank was seventeen years old. Both were fast approaching majority. Carl was twelve years old and Kate

was two years old. By item 3 of the will, William and Frank were devised all of testator's land in sections 19 and 30 and the devise went to them and their heirs and assigns forever, with the provision that "should one of them, however, die childless before reaching the age of twenty-one years the other is to take the entire estate." It was then provided that the widow should have the right to have and hold and use such premises for five years after testator's death and "to take and receive the rents, profits and proceeds thereof for said term of five years, and subject to the further right and power in my said wife to re-secure by mortgage or deed of trust upon said land the debt that may be existing thereon at the time of my death and interest thereon hereby giving my said wife full power and authority to bind said land for said debt, and make, execute, acknowledge and deliver all necessary mortgages or deeds of trust for the full execution of said power. It is my intention, however, and I here make an ultimate charge for all such mortgages, debt and interest upon the land given to my wife in the next succeeding item."

Items 4, 5 and 6 of the will should be quoted in order to understand better the viewpoint of testator in making the codicil. Those items are as follows:

"Item 4. I give and devise to my wife Alice Belle Hays absolutely my house and land known as the 'Ewing Place' being Lot No. three (3) of the Lexington Land Company, lying in Section thirty-four (34) in township fifty-one (51) and range twenty-seven (27) in Lafayette County, Missouri, subject to the payment however of all my debts including those which are incumbrances on my other land, which I here make as an ultimate charge on said 'Ewing Place' it being my will that after the exhaustion of my personal property and the other provisions made herein for my debts, if it becomes necessary to go upon my real estate, then that this land be sold by my executrix to pay such debts or the balance thereof, remaining due and unpaid.

"Item 5. I give and bequeath to my said wife all the balance of my property, including all my personal property, cash on hand, horses, cattle, sheep, hogs, grain, produce, growing crops, household and kitchen furniture, debts and choses in action coming to me, with which she is, however, to pay as far as may be necessary any obligation that I may owe to the Morrison-Wentworth Bank at the time of my death and to assist her in discharging my other debts including those secured by deed of trust upon my lands. My wife is also to give to my sons, Wm. T. Hays, Jr., and Frank W. Hays each five years after my death one horse suitable for farming purposes, one good milch cow, one brood sow and three shoats each, and is also to educate, clothe and board my children Karl W. Hays and Kate Hays free of charge and expense to them until they arrive at lawful age.

"Item 6. The five years use of the farm described in item three (3) given therein to my wife, is made for the express purpose of assisting her in making payment of my debts, which I think with my personal property reasonably sufficient for that purpose and the other purposes expressed in item five."

In item 3 the possession of William and Frank was only postponed for five years after the death of testator. From items 4, 5 and 6 and the excerpt from item 3, quoted above, it is apparent that testator was very deeply concerned about making adequate provision for the payment of his debts. So far as appears from item 2, the land devised to the widow for life with remainder in Carl and Kate was unencumbered. But it appears that the 300 acres devised by item 3 to William and Frank were encumbered. As stated in item 6, the five years' possession and use given to the widow in which to hold the land devised to William and Frank were "for the express purpose of assisting her in making payment of my debts."

It is reasonable to suppose that, after thinking over the provisions of the will for a week, testator came to the conclusion that the five years he had set for his wife to have the use and possession of the lands in sections 19 and 30, devised to William and Frank, might prove too short a time to enable her to pay off his debts. In order to avoid charging "Ewing Place" (the home place), given to the widow in item 4, with too great an encumbrance, testator apparently concluded that the time should be extended to eight years.

Now, from that viewpoint, the execution of the codicil can be understood as inspired by testator's dissatisfaction with the debt-paying provision of item 3. The codicil extended the time for the widow to hold the lands devised to William and Frank and to apply the proceeds to the debts of testator from five years to eight years and extended the power of the widow so that she could encumber all of his lands instead of limiting such power to the "Ewing Place" (item 4) and the lands in sections 19 and 30 (item 3).

Very enlightening upon the purpose and intent of testator in executing the codicil is the reservation to the widow of a life estate in the lands going to "the remaining heirs," upon the contingency of a child dying during minority and before coming into possession. Testator seems to have been thinking only of his debts in their relation to the lands described in item 3, which he had devised to William and Frank. Their possession had been postponed from five years under item 3 to eight years under the codicil. It was entirely possible that either of them might die before becoming of age or before coming into possession. In that event, the provision that the widow, if living, should take a life estate in the share of either William or Frank appears reasonable. But there is nothing in the codicil cutting down the life estate of the widow already provided for in the lands

in sections 24 and 25 devised to Carl and Kate under item 2. The testator surely could not have intended to do the useless thing of granting his widow a contingent life estate in lands in which he had already made provision for her to have that same estate in the first instance.

Another consideration, which suggests the thought that, although testator used the general words "any of my children" in the codicil, he really had in mind only the children mentioned in item 3, is that William and Frank were nearing majority when the will and codicil were executed and neither would come into possession either under item 3 or the codicil until after majority, even though testator should die soon after the execution of the will and codicil. But such coming into possession would likely be in the lifetime of their mother. For that reason, it was natural for testator to provide for his widow to have a life estate in their share, if either failed to come into possession, in addition to the life estate he had already provided for her in the lands mentioned in item 2. Coming into possession by Carl and Kate would likely be postponed much longer, due to the fact that their mother was probably of an age which would give her a life expectancy of a number of years. She actually lived over thirty-one years after testator died. Judged by the age of all the children and the many years she outlived testator, the widow may have been under forty years of age when the will was executed. Possession by William and Frank was a matter for immediate concern, while the question of possession in Carl and Kate was likely to have been much more remote from testator's concern when he added the codicil to the will.

There is much doubt and uncertainty concerning what testator meant by the words "remaining heirs," as used in the codicil. Appellants' contention that they mean the children of a child of testator would have much to commend itself if such words were used only in connection with the words "death . . . before the lands . . . come into their possession." But they are also used in connection with the words "death . . . in his or her minority . . . ." It must be remembered that, when the will was drawn, there were no grandchildren of testator in existence. Nor is it reasonable to think that testator expected any of his children to have children of their own before they reached their majorities. For that reason, the use of the words "remaining heirs" may at least as reasonably be construed to mean the heirs at law of testator, as to mean the children of a child of testator. Hence, the term "remaining heirs," as used in the codicil, must be regarded as ambiguous.

From the foregoing considerations, we conclude that the language of the codicil is not of that clear, definite and unequivocal character necessary to cut down the estate vested in Carl and Kate by the

prior provision of the will. It was therefore not effectual to postpone their right and interest in the land to the time when they would come into possession at the death of their mother, if they were alive at that time, as appellants contend.

We have already concluded that, under such item 2, *unaffected by the codicil,* Carl and Kate each become vested with an undivided half interest in the remainder in said land, subject to the contingency that the estate of either might be defeated in the event of his or her death without leaving descendants.· As such contingency did not happen and·cannot happen hereafter, the deed of trust executed by Kate Hays Barnhardt and her husband, after she had acquired whatever right, title and interest the other children and the widow of testator had in the land, effectually conveyed the title to respondent McGrew, through mesne conveyance from the purchaser at the foreclosure sale under said deed of trust, and Kate's children have no interest in the land.

In coming to this conclusion, we are not unmindful of the rule that the entire instrument, that is the will and codicil, must be considered as a whole and effect be given to each and every provision thereof, if possible. It is unnecessary to refer to the numerous cases cited by appellants in support of this rule. However, this rule of construction is modified by the equally well-recognized rule that a subsequent clause or codicil in a will should not be construed to cut down a devise contained in a prior provision, unless the language of the subsequent provision or codicil is as clear, definite and un-equivocal as the language used in the prior provision.

The interest in the other undivided one-half of the land in controversy was effectually cut off by the partition proceedings and the warranty deed of Carl Hays to Kate Hays and her subsequent deed of trust, whether Carl Hays took under item 2 alone or under item 2 modified by the codicil.· He outlived his mother, the life tenant, and did not die before he would have come into possession had he not previously conveyed his right, title and interest in the land. And because he died leaving a descendant, under no theory can appellant Maxine Hays now claim any right, title or interest in said land.

It results from the foregoing that the trial court reached the correct result and entered judgment for the right parties. It is unnecessary to consider the correctness of all the conclusions announced by the trial court. Its judgment is affirmed, both upon the appeal of plaintiffs and upon the appeal of defendant Maxine Hays. All concur.