HICKMAN PRICE and ANDREW PRICE v. EMMA GORDON and NELL GORDON PARMAN, Appellants.—147 S. W. (2d) 609.

Division One, February 14, 1941.

*George F. Hollis, Clark, Boggs, Peterson & Becker* and *Howard B. Lange, Jr.* for appellants.

356

*Harris, Price & Alexander* for respondents.

DALTON, C.—This is an action in partition. The petition is in conventional form. The property involved consists of two improved residence lots located in different subdivisions in the City of Columbia. Plaintiffs alleged that they owned a one-seventh ($\frac{1}{7}$) interest ($\frac{1}{14}$ interest each); and that the defendants owned a six-seventh ($\frac{6}{7}$) interest in the property. Plaintiffs asked partition. Defendants denied that plaintiffs had any interest in the real estate described. The questions presented were whether plaintiffs had an interest in the real estate described, and whether partition would lie in view of agreed facts. A jury was waived and the cause submitted to the court, sitting as a jury. The court found for plaintiffs; determined the interests of the parties as alleged by plaintiffs; found that the property could not be partitioned in kind without great prejudice; and ordered the property sold for the purpose of making partition. After timely motions for a new trial and in arrest of judgment were filed and overruled, defendants appealed.

We have jurisdiction because title to real estate is directly involved. [Pilkington v. Wheat, 330 Mo. 767, 51 S. W. (2d) 42, 43.] The action is at law. No affirmative equitable relief was requested by any party. [See Richards v. Earls, 345 Mo. 260, 133 S. W. (2d) 381, 384.] The evidence is largely documentary, but includes an agreed statement of facts and oral testimony about which there is no dispute. Respondent concedes that the facts are not in dispute.

David M. Hickman, a resident of Boone County, died in the year 1851, seized and possessed of certain real estate. By the third subdivision of his will, he provided that his entire estate, subject to certain exceptions, go to his wife and children, "according to the laws of the land." The will further provided that under certain circumstances, as therein provided, his executors were authorized to sell his real estate and invest the amount of the widow's dower in such other real estate as might be selected and agreed upon. The will provided that the real estate so purchased be held and enjoyed by the widow "during her natural life and at her death to descend to all my children, upon the terms named in the third item above." David M. Hickman was survived by his widow and seven children, including Thomas H. Hickman and David H. Hickman.

Various annual settlements, filed by the executors of the estate of David M. Hickman, deceased, recite the amounts arising from the sale of real estate and the amounts of money in which the widow had dower. The settlement, filed in August, 1855, recites: "The widow is entitled to dower in $1319.54 of the above amount arising from the sale of land."

Thereafter, the executors, in accordance with the will of David M. Hickman, "invested a portion of the proceeds arising from the sale of said lands, in which the widow was devised a dower interest, in (25 acres of) real estate of which defendants' (appellants') land is a part." The purchase was made in 1856 for a recited consideration of $1300. The deed from H. H. Buckner, as grantor, to the executors in their representative capacities, as grantees, among other things provided: "The purchase money hereinabove named being part of the proceeds of lands sold by said executors wherein Cornelia A. Hickman, widow of David M. Hickman, was possessed of dower, is hereby reinvested as provided for in the last will and testament of said David M. Hickman, deceased, for the use and benefit of the widow during her natural life, then to descend according to the provisions of said will." Both respondents and appellants claim a common source of title through the Buckner deed.

After the purchase of the above mentioned real estate, the widow went into possession and remained in possession thereof, and later married one John M. Robinson. She died about the year 1877.

On February 16th and May 14th, 1869, prior to the widow's death, the widow and all seven children of David M. Hickman made con-

veyances of parts of the lands acquired by the executors from Buckner. Subsequently, and during the year 1869, David H. Hickman, one of the children of David M. Hickman, died testate. The 7th provision of his will provides: "To my brother Thomas H. Hickman, I give a note for $2107, executed by him and payable at the death of his mother, being for interest in the homestead of our father David M. Hickman, also $2000.00 in . . . Mortgage Bonds, also the residue of my interest in the estate of my father which is in the possession of his widow—Mrs. Cornelia A. Robinson." By the 13th provision of his will he gave the residue of his estate to his daughter Mary and her bodily heirs. Mary Hickman, his daughter, born about 1866, was his only heir at law.

Appellants claim title as remote grantees of Thomas H. Hickman, alleged devisee, under the 7th provision of said will of David H. Hickman, by lost grant from him, and under the Statute of Limitations. Respondents are brothers and the only children and heirs of Mary Price, nee Hickman, supra. They claim as her bodily heirs, under the 13th provision of the David H. Hickman will, and say that a contingent remainder in fee in a one-seventh ($\frac{1}{7}$) interest vested in them on the death of their mother. Mary Price died November 11, 1937. Respondents aver that Thomas H. Hickman never claimed the share of David H. Hickman in this property, as a devisee under the will of David H. Hickman, and that David H. Hickman never conveyed or devised his one-seventh ($\frac{1}{7}$) interest in the property to Thomas H. Hickman.

Respondents' reply expressly alleged that David H. Hickman did not, by the 7th item of his will, devise his one-seventh ($\frac{1}{7}$) interest to his brother Thomas H. Hickman; "that under a true and proper construction of said will the gift by the testator David H. Hickman to his said brother, Thomas H. Hickman of the *lands* of his, the testator's, interest in the estate of his father was intended to and did operate solely and simply as a bequest or legacy of the testator's one-seventh ($\frac{1}{7}$) interest in the undistributed personal property then . . . in the estate of said David H. Hickman;" and that this interpretation was acquiesced in by Thomas H. Hickman and those claiming under him.

It is admitted that Thomas H. Hickman, as one of the beneficiaries under the will of David H. Hickman, deceased, in the year 1880, in the final settlement of said estate, receipted for the particular personal property described in the 7th item of the will, to-wit, the $2107 note, certain first mortgage bonds, and also for $849.40, being one-seventh ($\frac{1}{7}$) of the residue of personal property. Thomas H. Hickman also signed an extra receipt for a one-seventh ($\frac{1}{7}$) distributive share of the personal property, the receipt reading, "for amount due David H. Hickman, deceased, which said D. H. Hickman willed to me."

On July 1, 1870, Thomas H. Hickman, subsequent to the death of David H. Hickman, joined the widow and the five other living children of David M. Hickman, deceased, in a warranty deed to John M. Robinson for a part of the real estate acquired by the executors of of David M. Hickman from Buckner in 1856 (being the part wherein one of the two lots in controversy is located). The deed purported to convey the whole title, and not a fractional interest in said real estate.

Settlements filed in the estate of David M. Hickman, deceased, show that as late as 1876, the executors paid the taxes on the portion of the property acquired from Buckner, which had not been disposed of by the widow and children, and that they took credit for such tax payments. After the death of the widow in 1877, the five surviving children of David M. Hickman, deceased, other than Thomas H. Hickman, executed separate deeds, conveying an undivided one-seventh ($\frac{1}{7}$) interest each in the unsold portion of the real estate described in the Buckner deed (being the part wherein the other lot in controversy is located). One of these deeds refers to the property as "formerly belonging to the estate of David M. Hickman, deceased." The title conveyed by these deeds ultimately reached J. C. Conley, and J. Th. Fyfer and from them title passed by various conveyances to appellants. The five-seventh ($\frac{5}{7}$) interest covered by these deeds is not in dispute, nor is the one-seventh ($\frac{1}{7}$) interest of Thomas H. Hickman, as acquired under the Buckner deed and will of his father, in dispute.

On April 16, 1877, Thomas H. Hickman executed to Irvine O. Hockaday, as assignee in trust for creditors, a conveyance covering "All of the property of the said party of the first part, all lands and tenements . . . in the State of Missouri now owned or claimed by him the said Thomas H. Hickman," and more particularly described in a schedule attached thereto. The said schedule described a one-seventh ($\frac{1}{7}$) interest in an eight acre lot "belonging to the estate of David M. Hickman, deceased." On the 10th of May, 1879, Irvine O. Hockaday, as assignee of Thomas H. Hickman, for a recital consideration of $85, conveyed a one-seventh ($\frac{1}{7}$) interest in the 8 acre lot to J. Th. Fyfer. On November 1st, 1880, Irvine O. Hockaday, as assignee of Thomas H. Hickman, for a recited consideration of $90, conveyed a one-seventh ($\frac{1}{7}$) interest in the 8 acre lot to John C. Conley. The second lot in controversy is located in this 8 acre tract.

It is agreed that on or about February 1st, 1881, the said John C. Conley and J. Th. Fyfer went into possession of the lot located in the 8 acre tract described in the deeds to them, and that on July 1, 1870, John M. Robinson, supra, went into possession of the lot located in the property described in the deed to him and that "they and those who claim title under them, since said time, have been in the open, adverse, continuous, unquestioned and undisputed possession

of the same (the two lots), claiming sole ownership thereof, which was undisputed until on or about the 11th day of November, 1937, at which time plaintiffs asserted their claim to title therein and instituted this suit." Appellants, claiming title under said named parties, are now in the adverse possession of both lots described in the petition and are claiming the sole ownership thereof.

Appellants assign error upon the court's action in refusing their declaration of law in the nature of a demurrer to the evidence. They insist that upon the conceded facts the action will not lie. Appellants refer to that part of the agreed statement of facts wherein it is conceded that appellants were in the open, adverse, and undisputed possession of the property, claiming the sole ownership thereof, at the time this suit was instituted. The adverse possession of defendants was a defense interposed by the answer. A similar defense was made by the defendant in the case of Keller v. Keller, 338 Mo. 731, 92 S. W. (2d) 157, 163. In that case this court said: "Defendant also interposed a defense of adverse possession in Veronica Keller and himself to said count in partition. Although plaintiffs are tenants in common with Robert Keller and Veronica Keller, if plaintiffs have been ousted from possession by said parties and said parties were in exclusive adverse possession of the land at the time of the institution of the suit, claiming title as their own, plaintiffs are put to their action, in ejectment against said parties to settle the question of title before they may maintain partition. [Hutson v. Hutson, 139 Mo. 229, 235, 40 S. W. 886; Waddell v. Chapman, 292 Mo. 666, 674, (2), 238 S. W. 481, 483 (1).]" [See also: McQuitty v. McQuitty, 332 Mo. 1057, 1060, 61 S. W. (2d) 342; Armor v. Frey, 253 Mo. 447, 480, 161 S. W. 829.] In the case before us it is conceded that plaintiffs (respondents) were out of possession and that defendants (appellants) were in adverse possession, claiming the sole ownership of the described property, at the time this suit was instituted. Even if respondents were the owners of an undivided one-seventh ($\frac{1}{7}$) interest in the described property, in view of the conceded facts in the case, an action at law in partition would not lie, respondents are remitted to their action in ejectment (there being no count in ejectment) and appellants' declaration of law in the nature of a demurrer to the evidence should have been given.

Appellants further insist that the court erred, for other reasons, in refusing their declaration of law that plaintiffs could not recover. Appellants say: (1) that there is no evidence in the record to support a judgment for respondents (plaintiffs); (2) that respondents acquired no title under the 13th provision of the will of David H. Hickman, deceased, since title passed to appellants' grantor under the 7th provision of the will; and (3) that there was an unrebutted presumption of lost grant arising from the conceded fact that the appellants, and those under whom they claim, had been in adverse

possession for more than 60 years claiming sole ownership. Appellants further complain of the refusal of certain requests for specific findings of fact.

■ As there is no dispute about the facts, and the issue of title turns on the construction of written documents in the light of conceded facts, it was unnecessary to give declarations of law or findings of fact. [State ex rel. Mulholland v. Smith, 141 Mo. 1, 10, 41 S. W. 906; State ex rel. Kersey v. Western Union Telegraph Co., 304 Mo. 207, 220, 263 S. W. 419.] It is, therefore, unnecessary to review the refusal of requested declarations of law or requests for findings of fact, because the only question upon this appeal is whether the judgment below was the proper legal conclusion from the agreed facts. [Jewel Tea Co. v. Carthage, 257 Mo. 383, 388, 165 S. W. 743; State ex rel. Wenneker v. Cummings, 151 Mo. 49, 57, 52 S. W. 29; Cox v. Sloan, 158 Mo. 411, 429, 57 S. W. 1052; Hinkle v. Kerr, 148 Mo. 43, 48, 49 S. W. 864; Bartlett v. National Finance Corporation, 228 Mo. App. 789, 73 S. W. (2d) 451, 457.] The conceded facts, as heretofore set out, constitute in effect a special verdict upon which we must give expression to our conclusions of the law applicable thereto. [State ex rel. Wenneker v. Cummings, supra; Duell v. Leslie, 207 Mo. 658, 665, 106 S. W. 489; City of Stanberry v. Jordan, 145 Mo. 371, 382, 46 S. W. 1093; Hinkle v. Kerr, supra; Carr v. The Lewis Coal Co., 96 Mo. 149, 155, 8 S. W. 907.]

In the case of State ex rel. Mulholland v. Smith, supra (141 Mo. 1, 10, 41 S. W. 906), this court said: ''It is the province of the court to apply all the existing law to the facts agreed, and to pronounce thereon the proper judgment. Any proposition of law applicable to the facts is available to either party in the trial court. And when the cause, in the shape described, has been properly removed to an appellate court for review, any proposition of law found by the court to be applicable to the agreed facts may be relied upon there by either party, if nothing has occurred to indicate a waiver thereof. . . . Persons who put cases into shape for judgment on agreed facts are assumed to do so with the knowledge that any law justly applicable to those facts may be resorted to by either party, and that the right to claim the benefit of any law that fits the agreed facts exists on appeal as well as in the court of first instance.''

We must, therefore, determine whether or not the judgment entered by the trial court, to-wit, that respondents were the owners in fee simple of an undivided one-fourteenth ($\frac{1}{14}$) interest *each* in and to the real estate described; that appellants were the owners of an undivided six-fourteenths ($\frac{6}{14}$) interest *each* in said lands; that respondents and appellants were tenants in common; and that respondents were entitled to partition, was a proper judgment upon the conceded facts, including documentary evidence admitted to be correct.

We think this case turns upon whether or not the undivided one-seventh (1/7) interest of David H. Hickman in the unsold portion of the Buckner land passed to Thomas H. Hickman under the 7th provision of the will of David H. Hickman, deceased. Respondents take the position that the Buckner land, after its purchase by the executors of the estate of David M. Hickman, was not a part of the estate of David M. Hickman, deceased, but had been distributed to the widow and children; that the widow's dower, invested in the Buckner land, was no part of the estate of David M. Hickman, deceased, and was not subject to his debts; that. title to the Buckner land was never in David M. Hickman, as it was acquired long after his death; that such property could not pass under the 7th provision of the will, because the will describes the property intended to be transferred by the 7th provision, as ''the residue of my interest in the estate of my father;'' that there is no ambiguity or uncertainty in the words ''residue'' or ''estate,'' as each has a fixed and definite legal meaning; that the fund invested in the Buckner land, having been distributed to. the widow and children, was neither ''residue'' nor a part of the ''estate'' of David M. Hickman, deceased; and that the testator would not have referred to his own vested interest in remainder in fee in the Buckner land ''as still part of his father's undistributed estate.''

In construing the will of David H. Hickman, deceased, we must determine what property was intended to be transferred to his brother, Thomas H. Hickman, under the last clause of the 7th provision of the will. The intent of the testator controls. Section 567, Revised Statutes 1929, Mo. Stat. Ann., p. 344, provides that, ''All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them.''

In determining the intention of the testator, we may not rewrite his will. We must consider all words as used in their ordinary sense and meaning. We must determine intent from the testator's standpoint, and in view of circumstances and surroundings known to him. Respondents' reply concedes that the will must be construed.

In the case of Burrier v. Jones, 338 Mo. 679, 92 S. W. (2d) 885, 887, this court said: ''The function of a court is to construe a· will and not to make or rewrite one for the testator under the guise of construction. [69 C. J. 42; Scott v. Fulkerson, 332 Mo. 734, 60 S. W. (2d) 34; Grenzebach v. Franke, 315 Mo. 392, 286 S. W. 79.] If a will expresses the intention of the testator in clear and unequivocal language, there can be no occasion for construction; but if, when read from the four corners, there is doubt as to what the testator intended, then resort may be made to the rules of construction to aid in determining the intention of the testator.''

In the case of Grace v. Perry, 197 Mo. 550, 559, 95 S. W. 875, 877, this court said: ''The controlling rule in construing wills in this

State, to which all technical rules of construction must give way, is to give effect to the true intent and meaning of the testator as the same may be gathered from the whole instrument, if not violative of some established rule of law; and in arriving at that intention the relation of the testator to the beneficiaries named in the will and the circumstances surrounding him at the time of its execution are to be taken into consideration, and the will read as near as may be from his standpoint, giving effect, if possible, to every clause and portion of it, and to this end, if need be, words may be supplied and omitted, and sentences transposed.''

In the case of Gardner v. VanLandingham, 334 Mo. 1054, 69 S. W. (2d) 947, 949, this court said: ''Almost every will presents some difference in language and circumstances, so that, to some extent, each must be considered apart from any other case in order to ascertain its meaning in the light of the facts as they were known and considered by the testator. However, unless the intention is so clear that there is no room for construction, certain auxiliary rules of construction are looked to because they have been found by experience to more often reach correct results and because they are based upon policies which have been formulated in the interest of the public welfare. One such rule is that words are usually to be understood in their ordinary sense and primary meaning.''

In a concurring opinion in the case of Cornet v. Cornet, 248 Mo. 184, 242, 154 S. W. 121, 139, Judge LAMM states a further rule as follows: ''The intent of testator, to be got at by the terms of his will, has been called the pole-star of judicial interpretation. The statute runs the same way. To that, all agree. Figuratively, judges dealing with wills are to stand in the shoes of testator, or, sitting in his arm-chair, look through his spectacles as near as may be and thereby when the intent is obscure, try to get at it, and give it effect.'' [See also: Gannon v. Pauk, 200 Mo. 75, 86, 98 S. W. 471; Barnhardt v. McGrew, 319 Mo. 680, 5 S. W. (2d) 77, 80; Humphreys v. Welling, 341 Mo. 1198, 111 S. W. (2d) 123, 124.]

Keeping the above rules in mind we must determine the true intent and meaning of the testator. We think there was no distribution of the funds invested in the Buckner land within the intent, purpose and meaning of the will of David H. Hickman, that is, so the land would cease to be considered by an ordinary person as a part of the estate of David M. Hickman, deceased. The will of David M. Hickman expressly provided for the sale of lands and the reinvestment of the amount of the widow's dower in such real estate as should be selected and agreed upon. The will directed that the real estate so purchased was to be held by testator's widow during her natural life and at her death descend to his children. The deed from Buckner named the executors under the will of David M. Hickman, in their representative capacities, as grantees. David H. Hickman was one of

these executors and, as such, was a grantee in the deed. Although the Buckner deed was obtained after the death of David M. Hickman, it was an investment of funds obtained from the sale of the testator's real estate and was made by authority of his will. The deed from Buckner recites that the purchase was made by the executors under the terms and provision of the will of David M. Hickman. The deed refers back to his will for the disposition of the remainder in fee, after the termination of the life estate of the widow, and provides that the real estate "descend according to the provision of said will." Two of the children of David M. Hickman, other than David H. Hickman, in their conveyances of their interest in the 8 acre tract of the Buckner land, referred to it as belonging to or as having belonged "to the estate of David M. Hickman, deceased." Under the evidence we think that such was a natural and reasonable conclusion for an ordinary person to draw, even if such land did not technically constitute either "*residue*" or part of the "*estate*" of David M. Hickman. "The testator is not shown to have been a lawyer, and hence the technical terms he employed must be construed in the sense in which an educated man of average intelligence would have employed them." [Cross v. Hoch, 149 Mo. 325, 338, 50 S. W. 786.] In addition it appears that the executors of the estate of David M. Hickman, deceased, paid the taxes on the 8 acre tract as late as 1876, as if a part of said estate, and took credit therefor in their settlements.

The evidence indicates that the widow had accepted the provisions of the will of her deceased husband in lieu of statutory dower in such real estate. The widow, therefore, took under the will and not under the statute. [See p. 431, Sec. 10, R. S. 1845, now Sec. 332, R. S. 1929.] She went into possession of the land purchased by the executors for her. In two separate conveyances in his life time, David H. Hickman joined the widow and other children in conveying portions of the Buckner land which were then in the possession of the widow. In the 7th provision of his will David H. Hickman described the property intended to be transferred with the words: "which is in the possession of his (David M. Hickman's) widow, Mrs. Cornelia A. Robinson." These words fit in with the conceded facts. Mrs. Robinson was at that time in the possession of the unsold portion of the land purchased from Buckner. The testator's interest in such lands was determined by the provisions of the will of his father, David M. Hickman. It was natural and proper that he should refer to it as a part of his father's estate.

Respondents say the widow was never in possession of David H. Hickman's interest in remainder in fee at any time. She was, however, in possession of the land itself. Further, both appellants and respondents take the position that the widow was in possession of the undistributed balance of personal property in the estate of David M. Hickman at the time the will of David H. Hickman was written.

Appellants say the executors held her note for this balance "so it would be returned to the estate . . . upon her death." Respondents say the executors turned the residue of the estate over to the widow for her to "use without payment of interest" during her life. We find nothing in the record to support either position. We find no evidence in the record showing the widow was, at said time, in possession of any property of, or derived from, the estate of David M. Hickman, except of the real estate purchased by the executors from Buckner. The record of settlements made by the executors does show that certain funds were, from time to time, loaned, reinvested or "put at interest" for the widow. Respondents insist that the 7th provision of the will operated solely as a bequest of testator's one-seventh ($\frac{1}{7}$) interest in the undistributed personal property of his father's estate. We do not think the provision may be so limited.

We think that under the terms of the will of David H. Hickman, and the conceded facts, that David H. Hickman intended his interest in the unsold part of the Buckner land to pass to his brother Thomas H. Hickman under the 7th provision of the will. Respondents, therefore, obtained no interest in the real estate in controversy under the 13th provision of the will of David H. Hickman, and they are not entitled to partition. We think this holding is consistent with subsequent events which show that since 1870, as to one lot, and since 1881, as to the other, all conveyances have purported to convey the whole title and the parties in possession have claimed the sole ownership of the property. It is unnecessary to consider other propositions presented, to-wit, appellants' claim of title by adverse possession and by presumption of lost grant.

The judgment is reversed and remanded with directions to enter judgment for appellants. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.