LOUIS VAUGHAN McLURE CLARK v. MISSISSIPPI VALLEY TRUST COMPANY, a Corporation, Trustee Under the Will of CHARLES CLARK, Deceased, GRACE WILSON CLARK and MARY DENMAN WETMORE, Appellants.—No. 40573.—211 S. W. (2d) 10.

Division One, April 12, 1948.

Motion for Rehearing and to Modify Opinion and Judgment Overruled, May 10, 1948.

*Jacob M. Lashly, George S. Roudebush,* and *Lashly, Lashly, Clifford & Miller* for appellants.

*Leahy & Leahy* for respondent.

788

██ VAN OSDOL, C.—Appeal from a decree and judgment for $196,989.80 in favor of Louis Vaughan McLure Clark (now deceased), hereinafter referred to as Lewis Vaughan Clark, a life beneficiary; and against defendant Mississippi Valley Trust Company, trustee of a testamentary trust created by Charles Clark, deceased. Lewis Vaughan Clark as plaintiff had alleged defendant trustee had not paid to him as beneficiary allowances in amounts as the settlor-testator had intended. July 14, 1947, the trial court sustained the motion of John J. Nangle, as administrator of the estate of Lewis Vaughan Clark, to be substituted as party plaintiff. Defendant, the trustee; defendant, Grace Wilson Clark, a life beneficiary; and defendant, Mary Denman Wetmore, a daughter of the deceased brother of Lewis Vaughan Clark, have appealed from the decree and from the order substituting the administrator Nangle as party plaintiff.

The award of the judgment, $196,989.80, includes the items (1) $130,500 found by the trial court to be the difference between the sums which had actually been paid by the trustee to Lewis Vaughan Clark in his lifetime as a beneficiary out of the income derived from the trust and the amount, being one half of the net income derived from the trust, to which the trial court determined he was entitled, and $38,768.73 interest; (2) reimbursement of $20,000 for medical expenses found by the trial court to have been incurred by Lewis Vaughan Clark; and (3) $7721.07 income tax paid by the trustee upon and out of the annual allowance paid to Lewis Vaughan Clark.

The cause was submitted in the trial court July 8, 1946; and August 12, 1946, defendant trustee suggested the death of Lewis Vaughan Clark, which had occurred on August 5th. On October 30, 1946, John J. Nangle, as administrator of the estate of Lewis Vaughan Clark, moved to be substituted as plaintiff. Defendants resisted the motion on the ground the claim did not survive but was extinguished by the death of Lewis. November 20, 1946, counsel for plaintiff requested the trial court to enter a decree "nunc pro tunc during plaintiff's lifetime"; and on March 28, 1947, a decree was entered as of July 8, 1946. On April 25, 1947, the trial court on its own motion set aside the decree and entered an amended decree as of the date of the original decree, July 8, 1946. (Appellants-defendants challenge the propriety of the nunc pro tunc entry [13] of judgment.) As stated, July 14, 1947, the trial court sustained the motion of John J.

Nangle as administrator of the estate of deceased to be substituted as plaintiff; but it seems that July 8, 1947, the Probate Court of the City of St. Louis had appointed John J. Nangle executor of the will of deceased Lewis Vaughan Clark, and John J. Nangle has filed a motion in this court to be substituted as executor instead of administrator, which motion was on October 13, 1947, by this court ordered taken with the case. And now the motion is sustained, in order to make the personal representative party plaintiff in his true capacity as executor.

We hold the trial court was right in ordering the substitution of the personal representative as plaintiff. Section 1281 R. S. 1939, Mo. R. S. A. sec. 1281; Section 22 (3) Civil Code of Missouri; Laws of Missouri, 1943, p. 364, Mo. R. S. A. sec. 847.22. The nunc pro tunc entry of judgment, if proper, had the legal effect of a rendition of a judgment in Lewis Vaughan Clark's lifetime. 15 R. C. L., Judgments, secs. 68 and 70, pp. 626-8. Although, assuming as defendants contend, the claim is not such as would survive a plaintiff's death, yet the action did not abate, since the claim became merged in the judgment entered as of a date prior to the death. So long as the judgment stands, the controversy is concerned with the personal representative's property right, the judgment itself. Vitale v. Duerbeck, 338 Mo. 556, 92 S. W. 2d 691; Siberell v. St. Louis-San Francisco R. Co., 320 Mo. 916, 9 S. W. 2d 912. See also Madden v. Fitzsimmons, 235 Mo. App. 1074, 150 S. W. 2d 761.

We will assume the nunc pro tunc entry of judgment was proper, and will examine the question whether Lewis Vaughan Clark had an enforcible claim in his lifetime. The latter fundamental question may be answered by a review of the relevant facts, by an interpretation of the will and codicil to the will of Charles Clark, and by the determination of the effect of a decree entered in 1928 by the Circuit Court of St. Louis County.

Charles Clark executed his will December 19, 1910. He, a widower, died April 16, 1912. He was survived by two sons, Charles McLure Clark, now deceased; and plaintiff's decedent, Lewis Vaughan Clark. Lewis had been thrice married and twice divorced. His second marriage was to Grace Wilson Clark, defendant-appellant herein. His third marriage was to a citizen of France. Since 1915 or 1916 he had lived abroad—in France until the beginning of World War II; he then went to Switzerland. He retained his American citizenship, however, and had been "back here" for "a few weeks" in 1932. In April 1946, he returned to St. Louis, but became seriously ill on the aeroplane journey and was unable to attend the trial of the instant case in July 1946.

Testator (among other bequests) bequeathed his son Charles McLure Clark the sum of $50,000, and his son Lewis Vaughan Clark $5000; and by Paragraphs Seven and Eight of his will testator created two

testamentary trusts, the defendant Mississippi Valley Trust Company as trustee. The one in the seventh paragraph named his son Charles as beneficiary. The son Charles died in 1942; he was survived by his daughter, Mary Denman Wetmore, defendant-appellant.

The trust in Paragraph Eight was to testator's son Lewis and to Grace Wilson Clark, defendant-appellant, as beneficiaries, for their support and maintenance during their lives or the life of the survivor. The corpus of the trust was a tract of real property in St. Louis and half of testator's residuary estate. It was provided the trustee should take, manage and control the property; invest, sell and reinvest; collect and receive all income; "first pay all taxes and other charges and expenses upon such property"; and pay monthly or quarterly to the beneficiary or beneficiaries as the trustee might determine to be for their best interests, with full power to equalize such payments. It was, in part, further provided,

"The said Trustee, from the net income derived from the trust estate as aforesaid, shall annually pay in equal monthly installments during the lives of said Lewis Vaughan Clark, and Grace (Wilson) Clark and to each, severally and separately, in such proportions as it may deem advisable [14] and just for their joint and separate support, considering their joint or several comfort, necessities and station in life, such part of all of said income, as it may determine to be necessary. . . .

"In the event of the death of both my son, Lewis Vaughan Clark and said Grace Clark, no issue of their marriage or of any subsequent lawful marriage of my said son surviving, this trust shall cease and the trust estate shall be delivered over to my heirs under the laws of the State of Missouri."

May 5, 1911, testator executed a codicil to his will in which he directed,

"Item (a). WHEREAS, my Son, Lewis Vaughan Clark, has an income through a Trust created in his behalf in and by his mother's Will; and

"WHEREAS, I am of the opinion that an annual income of Six Thousand Dollars is amply sufficient for his support and maintenance, and that a greater income would be harmful to him. Therefore, it is my will and direction that out of the income of the Trust Estate created by the eighth paragraph or Item of my Will, in so far as it is in his favor, that only such part thereof be paid him as will make his total income when added to that received from the Trust created in his favor by His Mother's Will, as aforesaid, equal to Six Thousand Dollars per annum, and no more; and the rest and residue of said income, in so far as he may be entitled to participate therein under the provisions of said eighth paragraph of my said Will, be added to the body of the Trust Estate thereby created. . . ."

In April 1928, the trustee instituted an equitable action. Charles McLure Clark, Lewis Vaughan Clark, Grace Wilson Clark and Mary Denman Carignani (now Wetmore) were parties defendant. The trustee asked relief in the nature of a construction of the will and codicil thereto. On the day the petition was filed the Circuit Court of St. Louis County entered a decree reciting that by his will Charles Clark had the intention that out of the net income derived from the trust estate created by Paragraph Eight of his will such provisions should be made for Lewis Vaughan Clark as would be ample and adequate for his support and maintenance, considering his comfort, necessities and station in life; that at the time of the execution (in 1911) of the first codicil of the will, and at the time of the death of the testator, the sum of $6000 annually was ample and adequate and was so regarded by testator; that shortly prior to the institution of the action Lewis Vaughan Clark for the first time had represented to the trustee that, by reason of the increased cost of living and the decreased purchasing power of the dollar, the sum of $6000 annually, which he had been and was then receiving from the income of the trust estate created in his behalf by his mother, was not ample and adequate for his support and maintenance, considering the comfort, necessities and station in life intended for him by the testator; that Lewis Vaughan Clark had applied to the trustee for payment out of the net income of the trust created by Paragraph Eight for such sums as the trustee might determine were (in addition to the amount received from the trust created by the mother) adequate; that the trustee had investigated and determined the sum of $6000 annually was at the time inadequate; that the plaintiff as trustee had filed the action, there being a doubt as to the proper construction of the will with respect to the rights and duties of the trustee in the premises, for the construction of the same; and that, by reason of the increased cost of living and the decreased purchasing power of the dollar, the real intention of the testator to make adequate provision for the maintenance and support of Lewis Vaughan Clark would be defeated, unless the trustee from and after the date of the decree were permitted and authorized to pay to Lewis Vaughan Clark, from the income accruing from the trust estate created by Paragraph Eight of the will, the sum of $7000 a year. And the court ordered, adjudged and decreed that plaintiff as trustee, from and after the date of the decree, out of the net income accruing from the trust estate created by Paragraph Eight, distribute to Lewis Vaughan Clark for his support and maintenance the sum of $7000 a year, in equal monthly installments.

As observed, supra, all of the original parties to the instant action (and Charles McLure Clark, who, as stated, died in 1942) were parties to the 1928 action. The decree was approved by counsel for the parties including counsel for Lewis Vaughan Clark.

■ A codicil is to be regarded as a subsequent clause of a will, and the will and codicil are to be construed as one instrument. It is obvious a codicil, being of a later date, is made with a purpose of modifying or changing in some way the effect of the testamentary disposition made in the earlier instrument, the will, to which the codicil is attached. The codicil is not a new will, however; it but becomes a part of the will which it in some way modifies or changes. Wells v. Fuchs, 226 Mo. 97, 125 S. W. 1137. The clear, plain, positive terms of a will cannot be changed by a subsequent clause, unless such subsequent clause is as clear, plain and unequivocal as the prior clauses. Sevier v. Woodson, 205 Mo. 202, 104 S. W. 1, cited by plaintiff. Such is the general tenor of the language of the court in Palmer v. French, 326 Mo. 710, 32 S. W. 2d 591; and St. Louis Union Trust Co. v. Kelley, 355 Mo. 924, 199 S. W. 2d 344, also cited by plaintiff. In the latter case the Court said, "This, however, is nothing more than an application of the general rule that the intention of the testator must be ascertained from the will as a whole, for in no such case would the weaker provisions be permitted to overcome the stronger." As with a subsequent clause of the will, so with a codicil. Middleton v. Dudding, Mo. Sup., 183 S. W. 433; Wells v. Fuchs, supra. It has been suggested the modifications or changes made by a codicil, being of a later date than a will, are usually more radical than those found in different clauses of the will which were made at one and the same time. Wells v. Fuchs, supra. Now, if the modification or change made by a codicil (or by a subsequent clause of the will) is sufficiently clear, plain and unequivocal that it can be determined (from the four corners of the will considered as including the modification or change wrought by the codicil) what was the true intent of the testator, the intent must be given effect. Barnhardt v. McGrew, 319 Mo. 680, 5 S. W. 2d 77; Wells v. Fuchs, supra; Sevier v. Woodson, supra; Section 568 R. S. 1939, Mo. R. S. A. sec. 568.

■ We do not have difficulty in seeing the language of Paragraph Eight of the will gave the trustee discretionary power in using the income of the trust therein created for the support and maintenance of testator's son Lewis and Grace Wilson Clark. Considering the will alone, the trustee's exercise of the discretionary power conferred would be subject to judicial review if the trustee were charged with an abuse of discretion. Vol. I, Restatement of the Law of Trusts, sec. 187, particularly Comments d. and e., pp. 480-1.

The codicil, however, definitely shows the testator intended to change his will so the discretionary power of the trustee as conferred by Paragraph Eight was not to apply to the participation by Lewis in the income of the trust in the paragraph created. The codicil expressed the testator's opinion of the amount "amply sufficient" for the support and maintenance of the beneficiary Lewis. Having set

out his opinion, the testator said, *"Therefore,"* it was his will and direction that, out of the trust estate created by the Paragraph Eight, the trustee was to pay testator's son, Lewis, *"only such part"* of the income as would make up (when added to the income received from the trust in the will of the mother) the sum of $6000 annually, *"and no more."* By his codicil testator plainly put his opinion in place of the discretion formerly conferred upon the trustee in Paragraph Eight. And the testator said the rest of the income, in so far as his son may have been entitled to participate therein under the provisions of the Paragraph Eight, should be added to the corpus of the trust estate. Viewing the will and the codicil as one instrument, it is our opinion, the testator intended the subsequent clear, plain and unequivocal direction in the codicil should govern. The explicit direction erased, took away, and left no room for the discretionary power given the trustee in the priorly executed Paragraph Eight.

[16] We are unable to align our view with plaintiff's basic contention the Circuit Court of St. Louis County by its decree of 1928 held the codicil to be null and void. As we construe the decree, the court undertook to authorize the trustee to increase the amount of the allowance as provided in the will as modified by the codicil. The decree is premised upon the recitals of findings that the sum of $6000 annually was ample and adequate in 1911 and in 1912, and was so regarded by the testator. Having recited the adequacy of the allowance in 1911 and 1912, the court by its decree, it seems, undertook to authorize an amount of allowance the court considered testator would have directed had he anticipated the subsequent change in economic conditions, and an allowance of $7000 annually out of the income derived from the trust created in Paragraph Eight was authorized. The decree did not undertake to hold the direction of the codicil void, as in conflict with any prior and more clear clause in the will, nor did it recognize the discretionary power of the trustee to determine the ratio or amount of the allowance from income (derived from the trust established by Paragraph Eight) the beneficiary Lewis should share.

In view of our ruling, supra, in interpreting the will and codicil, it is unnecessary to further examine the 1928 decree or to endeavor to determine the propriety of the court's action, nor is it necessary that we should decide any question of the applicability of the doctrine of res judicata. However, we are furthermore of the opinion Lewis Vaughan Clark was estopped by his conduct from claiming more than the $7000 annually in the decree authorized.

The beneficiary Lewis, sui juris, was a party to the 1928 action; and so was Mary Denman Wetmore, defendant-appellant herein; and the beneficiary, Grace Wilson Clark. The beneficiary Lewis since 1912 had been receiving the $6000 annually as limited by the codicil. The coincidence of dates of the petition and decree lend credence to

the belief the decree was a consent decree, agreed to by the interested parties. Now in the year 1945, seventeen years after the 1928 action, the beneficiary Lewis sought to circumvent the decree entered in the action to which he was a party. But since the year 1928 the trustee has paid the beneficiary Lewis the sums of $7000 per year (save and except deductions for the payment of the beneficiary's income tax, further noticed infra). These payments were manifestly made on the theory the beneficiary was entitled to such part of the income as was authorized by the decree of the Circuit Court of St. Louis County. The payments were apparently so accepted by the beneficiary Lewis; and no contention had been made by him that the amounts were not those provided by the will as interpreted by the 1928 decree, until the institution of the instant action.

In the case of Sweeney v. Security Trust Co., 116 W. Va. 344, 180 S. E. 897, a beneficiary was contending she was entitled to an accumulation of income of a trust estate and was in the future entitled to the entire net income derived from the trust. By the will of the settlor, who died in 1908, a trustee was empowered to manage the trust property and if need be reinvest the same as to produce an income and "devote and apply such income, or so much thereof as may be needed to the maintenance and support" of the beneficiary during her life. In 1920 the trustee(s) had instituted an equitable action making the beneficiary a party defendant. The plaintiff's bill in the action of 1920 stated the amounts theretofore paid the beneficiary and further alleged that, owing to the increased cost of living, a sum of $1250 monthly was necessary for the proper maintenance and support of the beneficiary, but that before paying such a monthly sum the trustees desired the aid and authority of a court of equity; after hearing the evidence the court decreed the payment of $1250 per month to the beneficiary would be reasonable and just, and directed the payment of that amount until further order "as and for the amount she is entitled to under the provisions of the trust." Another action was instituted in 1924 in which action similar allegations were made, and the allowance was increased to $2500 per month. [17] Although the reviewing Supreme Court of Appeals of West Virginia interpreted the will to so provide that the beneficiary was otherwise entitled to the entire net income derived from the trust, the Court was of the opinion the beneficiary was estopped from recovery of the whole net income save from the time she demanded it. She received the stated sums monthly in recognition of the theory she was entitled to only so much as the trustees, acting under the authority of the circuit court, should pay her; and the balance of the income had become part of the principal for reinvestment. A dissenting judge, however, was of the view the doctrine of estoppel should not be decisive, no party of interest having changed his position in relation

to the subject matter of the action, nor had any one been misled or prejudiced by plaintiff's conduct.

In our case, however, it may be said the parties defendant in the action of 1928 (the co-beneficiary and those then interested in the remainder estate in the trust property) forewent their rights to insist on the direction of the codicil, and the trustee had paid the beneficiary and he had accepted thousands of dollars in excess of the amount of allowance limited by the codicil.

Item (1) of the claim and judgment and interest on the item should have been disallowed.

■ Of the Item (2) for medical expenses—there was contained in Paragraph Eight of testator's will a provision authorizing the trustee to encroach upon the corpus of the trust estate "in case of extremity of the beneficiary." The trustee was to exercise "its best discretion . . . as to what is such extremity . . . and what amount of the principal is necessary to be used." (The codicil explicity erased the trustee's discretionary power to determine the amount of the beneficiary's allowance for "support and maintenance." Such an explicit change would negative an intention to make any change in the trustee's discretionary power to encroach upon the corpus of the trust estate "in case of extremity." See St. Louis Union Trust Co. v. Little, 320 Mo. 1058, 10 S. W. 2d 47.)

During the years of World War II the trustee had received cablegrams from the beneficiary Lewis, then in Switzerland, stating that he had spent $20,000 in doctor bills and that medical treatment was urgently required; and the trustee had received other communications —letters from the beneficiary stating he was ill and owed physicians for treatment. The evidence, in our opinion, was insufficient to justify the finding and decree that the beneficiary had been "forced to expend" $20,000 for medical and hospital services. However, we believe, the testator must have intended the trustee should meet such unusual expenses as those entailed by serious illness, and we will not close the issue, but leave it open to the trustee's further investigation and exercise of its discretion. The cause will be remanded to the trial court to await the trustee's report of its action.

We see from the evidence (and we know) that communications between America and Europe during World War II were interrupted at times, and at other times difficult and uncertain. We have no doubt it was the intent of the testator that, should the beneficiary Lewis become seriously ill and incur obligations for necessary medical treatment, the trustee should make sufficient allowance to defray the expense at the time, even out of the corpus of the trust estate. In the exercise of the discretionary power "in case of extremity of the beneficiary" the trustee had the duty to make inquiry into the relevant circumstances and to exercise its sound discretion. Vol I, Restatement of the Law of Trusts, sec. 187, Comment h., pp. 483-4. It

is probable the urgency and necessity of beneficiary's medical needs could not be adequately investigated by the trustee or communicated or shown by the beneficiary to the trustee at the time, and the beneficiary may have of necessity become obligated, or raised and expended funds from some other resource. We think the beneficiary in his lifetime had a right to invoke the jurisdiction of a [18] court of equity to require the trustee to investigate and to exercise its discretion in determining and allowing the amounts of obligations or monies for necessary medical treatment, surgery, nursing and hospitalization incurred or paid by him. And we believe such a claim, being of an equitable nature, survived the beneficiary's death and may now be urged by his executor.

■ There was evidence introduced tending to show the trustee's deduction and payment of Federal income tax from and upon the beneficiary's allowance were consented to by him. However that may be, the payment of the income tax on the beneficiary's allowance, the allowance being derived from the income of the trust estate, was the obligation of the beneficiary. 26 U. S. C. A. sec. 162(b) and (d), pp. 669-670; Helvering v. Butterworth et al., 290 U. S. 365, 54 S. Ct. 221. And see Old Colony Trust Co. v. Williams, 320 Mass. 110, 68 N. E. 2d 4. As between the trustee and beneficiary, since the testator did not direct or authorize the payment by the trustee of the income tax upon the beneficiary's allowance (at the time of testator's death there were no Federal income taxes), the weight of the tax would rest upon the beneficiary where the law places it. Compare Priedeman v. Jamison, 356 Mo. 627, 202 S. W. 2d 900; In re Holmes' Estate, 328 Mo. 143, 40 S. W. 2d 616; Old Colony Trust Co. v. Williams, supra. Item (3) of the claim and judgment, $7721.07, should have been disallowed.

■ As we see it, plaintiff's decedent, Lewis Vaughan Clark, instituted this action for his own benefit, not for the benefit of the trust estate, and he should not have expected (nor should his personal representative now expect) an allowance out of the trust estate for attorneys' fees in prosecuting the action. St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 186 S. W. 2d 578; St. Louis Union Trust Co. v. Kern, 346 Mo. 643, 142 S. W. 2d 493.

The judgment should be reversed and remanded.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.